# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 03-3315, 03-3316 & 03-3317

GEORGE MALCOM ANTHONY RASHIAH,
SALOMI HIRANTHIE ANTHONY RASHIAH,
and ANNE OSHANI ANTHONY RASHIAH,

*Petitioners,*

*v.*

JOHN D. ASHCROFT,

*Respondent.*

_____

Petitions for Review of Orders
of the Board of Immigration Appeals.
Nos. A78-643-087, A78-643-088 & A78-643-089

_____

ARGUED SEPTEMBER 24, 2004—DECIDED NOVEMBER 16, 2004

_____

Before FLAUM, *Chief Judge,* and RIPPLE and WILLIAMS, *Circuit Judges.*

FLAUM, *Chief Judge.* Petitioners George Malcom Anthony Rashiah, his wife Salomi, and their daughter Anne, petition for review of an order of the Board of Immigration Appeals ("BIA") denying their applications for asylum and withholding of removal. For the reasons stated herein, we affirm the decision of the BIA.

## I. Background

Petitioners, natives and citizens of Sri Lanka, were admitted to the United States on December 19, 1998, as non-immigrant visitors with authorization to remain in the United States for up to six months. After petitioners overstayed their visas, the former Immigration and Naturalization Service ("INS")[1] began removal proceedings. At a hearing before an Immigration Judge ("IJ"), petitioners conceded removability but requested asylum and withholding of removal under the Immigration and Nationality Act and the Convention Against Torture ("CAT"). In the alternative, petitioners requested voluntary departure.

The lead petitioner[2] is a thirty-two-year-old man of Tamil ethnicity, whose native language is Tamil. Although he attended school when he was young, petitioner had difficulty because the language of instruction was Sinhalese, the language of the majority of Sri Lankans who are ethnically Sinhalese. In 1986, petitioner abandoned his hopes of pursuing higher studies and accepted a job as a sales agent for a pharmaceutical company.

Petitioner's troubles in Sri Lanka began in 1983. That year, a group of Tamils were attacked by Sinhalese, with the help of the Sri Lankan armed forces, in retaliation for the bombing of a government truck. This incident led to a wave of violence against Tamil people throughout Sri Lanka.

---

[1] On March 1, 2003, the INS ceased to exist as an independent agency and the Department of Homeland Security assumed its functions.

[2] George Malcom Anthony Rashiah (referred to herein as "petitioner") is the lead applicant for relief and his wife and daughter are derivative applicants who rely on his application. *See* Immigration and Nationality Act § 208(b)(3), 8 U.S.C. § 1158(b)(3); 8 C.F.R. § 207.7(a). Only petitioner testified before the IJ and the facts recounted here are culled from his testimony.

During this time, petitioner's house in the capital, Colombo, was looted and his family fled to a refugee camp where they stayed for three days. Upon return, they found their house in severe disarray. Also during this time, police forces scrutinized petitioner when he traveled, inspecting his identity card, separating him from other passengers, and searching his belongings. On two or three occasions, officers took petitioner to a police station for questioning where he was "abused with words," such as "you are a [Tamil] Tiger[3] and the police do awful things to the Tigers." On one occasion, he was slapped by an officer. Petitioner testified that nearly all Tamils in Colombo were subjected to similar harassment.

In 1994, petitioner married his wife, Salomi, who is Sinhalese. The two experienced many problems as an ethnically mixed couple. For example, they were verbally abused by members of the army when traveling and Salomi was ostracized by her family. Neither, however, was ever physically harmed.

On April 25, 1995, petitioner and his wife had a daughter, Anne, whom they gave Salomi's Sinhalese surname. The couple was able to obtain adequate medical care for their daughter, and they did not suffer any abuse at the hospital because they were an ethnically mixed family.

In August 1997, petitioner became an independent bus-

---

[3] The name "Tigers" refers to the Liberation Tigers of Tamil Eelam ("LTTE"). The U.S. State Department's 2003 Country Report for Sri Lanka describes the LTTE as "a terrorist organization that advocated a separate ethnic Tamil state in the north and east of the country." In December 2001, after the IJ's August 1, 2001 decision, the government and the LTTE announced unilateral cease-fires, and a formal cease-fire accord was signed in February 2002. Though there has been no final resolution of the conflict, the peace process reportedly is underway. These developments subsequent to the IJ's decision do not affect our analysis of its denial of petitioner's application.

inessman, buying and selling cosmetics and textiles, and maintaining a small shop in which to store his goods. In December 1997, members of the LTTE came to petitioner's store to demand money and support for the organization. In February 1998, he witnessed his shop being looted but he did not report the incident to police because he believed they would not help a Tamil man. Petitioner once gave 2000 rupees, approximately one-fifth of his monthly earnings, to LTTE members who asked for money. He did this out of fear of what would happen if he refused.

In 1998, petitioner and his wife and daughter decided to come to the United States to seek asylum. In preparation for their departure, each obtained a Sri Lankan passport and visa after telling U.S. Embassy officials that they were going to visit Salomi's sister in New York, New York. In November 1998, fifteen days before his departure from Sri Lanka, petitioner closed his store and liquidated most of his stock. Shortly before leaving, petitioner was detained by the police for two days, verbally assaulted, and threatened. There is no evidence that this was connected to his imminent departure.

Petitioner and his wife and daughter arrived in New York on December 19, 1998, and moved in with petitioner's sister-in-law. The three remained in New York until July 2000, when they moved to Chicago, Illinois, and applied for asylum.

Petitioner believes that if he returns to Sri Lanka he will be asked to give money to the LTTE again and that he will be shot if he refuses. Petitioner also fears that the government will scrutinize and harass him, that his wife is in danger of being harmed or attacked because she is married to a Tamil man, and that his daughter will experience some of the same problems that he has experienced. Petitioner does not believe that there are any areas in Sri Lanka where he would be safe from the kind of verbal abuse and taunting he experienced in Colombo.

On August 1, 2001, the IJ issued a decision denying petitioner's applications for asylum, withholding of removal, and CAT protection. The IJ found that petitioner's asylum application was time-barred because he had failed to file it within one year of his arrival in the United States and no "exceptional circumstances" existed to excuse the untimely filing.[4] The IJ noted, however, that "[e]ven assuming that the lead [petitioner] were able to somehow avoid the one year limit on applying for asylum, he does not qualify for asylum because he has not presented evidence establishing either past persecution or a well-founded fear of future persecution." In addition, the IJ denied petitioner's application for withholding of removal, finding as to the CAT application that he had not established "that it would be 'more likely than not' that he would be tortured if returned to Sri Lanka." Petitioner was granted voluntary departure.

Petitioner timely appealed the IJ's decision to the BIA. On August 4, 2003, the BIA adopted and affirmed the IJ's decision and dismissed the appeal. This petition for review, in which petitioner challenges only the denial of withholding of removal under CAT, followed.

## II. Discussion

Petitioner challenges the BIA's order on several grounds. First, he argues that the BIA incorrectly applied the one-

---

[4] Section 208(a)(2)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1158(a)(2)(B), provides that an alien may not apply for asylum "unless the alien demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." If not timely filed, an application may be considered "if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application." 8 U.S.C. § 1158(a)(2)(D).

year filing deadline for asylum applications to his claim for protection under CAT.[5] A fair reading of the BIA's order, however, does not support this contention.

The IJ's decision analyzes petitioner's requests for asylum and CAT protection separately, applying the one-year filing rule only to the former. The BIA adopted and affirmed this decision, explaining in its order that its "conclusions upon review of the record coincide with those the Immigration Judge articulated in his or her decision." Though the order reiterates the basis for the denial of the asylum application, namely, petitioner's untimely filing, it does not suggest that the BIA has applied this rule to the CAT claim as well.

Next, petitioner argues that the BIA violated his due process rights by failing to consider his brief on appeal. Whether an alien's right to due process has been violated is a legal question which we review de novo. *See Kuschchak v. Ashcroft*, 366 F.3d 597, 602 (7th Cir. 2004) (citing *Nazarova v. INS*, 171 F.3d 478, 482 (7th Cir. 1999)). The BIA's actions are entitled to a presumption of regularity, and thus the burden is on petitioner to convince us that the BIA failed to consider the evidence and arguments presented. *Kaczmarczyk v. INS*, 933 F.2d 588, 595 (7th Cir. 1991) (citations omitted).

Petitioner's assertion is based on the BIA's reference in its order to his "Notice of Appeal," but not to his appellate brief.[6] This does not rebut the presumption of regularity, however, because the BIA is authorized to issue summary

---

[5] The parties agree that claims for protection under CAT need not be filed within one year of arrival in the United States. *See* 8 C.F.R. § 208.13(c)(1) (if an applicant is ineligible for asylum because of having failed to timely apply, "the applicant shall be considered for eligibility . . . for withholding of removal under the Convention Against Torture.").

[6] The order also makes no mention of the government's brief.

affirmances and is not required to list in its order the filings upon which it has relied. *See* 8 C.F.R. § 1003.1(e)(4)(ii). In the absence of evidence that the BIA neglected its duty to fully review the decision of the IJ, we will not presume neglect simply because it did not list the steps it has taken. *Cf. Ememe v. Ashcroft*, 358 F.3d 446, 451 (7th Cir. 2004) (the BIA's practice of issuing summary affirmances does not violate applicants' due process rights) (citing *Georgis v. Ashcroft*, 328 F.3d 962, 967 (7th Cir. 2003)).

As to the arguments regarding the one-year filing rule and his appellate brief, petitioner relies on omissions, rather than affirmative statements, in the BIA's order. The BIA, however, is not required to "write an exegesis on every contention." *Mansour v. INS*, 230 F.3d 902, 908 (7th Cir. 2000) (citations omitted). Rather, it is required merely to "consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Id.* In both of the cases cited by petitioner, *Mansour* and *Chitay-Pirir v. INS*, 169 F.3d 1079 (7th Cir. 1999), we remanded because of factual errors in the BIA's order which suggested that it had not sufficiently considered or understood the petitioners' claims. In this case, there is no evidence of factual error or confusion by the BIA. A fair reading of its order does not suggest that it failed to consider petitioner's brief or that it applied the wrong legal standard in denying petitioner's CAT application.

Finally, petitioner argues that the BIA erred in finding that he was not entitled to withholding of removal under CAT. Because the BIA summarily affirmed the IJ's decision without opinion, the IJ's decision constitutes the "final agency determination" for purposes of our review. *Ememe*, 358 F.3d at 450. We review the denial of CAT protection under the highly deferential substantial evidence test, which requires us to affirm if the IJ's order is "supported by reasonable, substantial, and probative evidence on the record

considered as a whole." *Id.* at 451 (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)); *Oforji v. Ashcroft*, 354 F.3d 609, 615 (7th Cir. 2003). The IJ's legal analysis is reviewed de novo. *Marquez v. INS*, 105 F.3d 374, 378 (7th Cir. 1997) (citations omitted). Petitioner both challenges the IJ's legal analysis and argues that her ultimate conclusion is not supported by substantial evidence.

To obtain CAT protection, an applicant must prove that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." **8** C.F.R. § 208.16(c)(2). Torture is defined under CAT as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . with the consent or acquiescence of a public official." **8** C.F.R. § 208.18(a)(1). "Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment." **8** C.F.R. § 208.18(a)(2). Mental pain and suffering will only constitute torture when "prolonged mental harm" results from the occurrence or threat, to oneself or another, of "severe physical pain or suffering," the administration of "mind altering substances," or "imminent death." **8** C.F.R. § 208.18(a)(4).

In determining whether it is more likely than not that an applicant will be tortured, "all evidence relevant to the possibility of future torture shall be considered." **8** C.F.R. § 208.16(c)(3). The implementing regulation specifically lists four types of relevant evidence:

>     (i) Evidence of past torture inflicted upon the applicant;
>
>     (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;
>
>     (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and

(iv) Other relevant information regarding conditions in the country of removal.

*Id.*

The IJ correctly set forth this legal standard in her decision and concluded that petitioner had failed to provide any credible evidence that would support the conclusion that it is more likely than not that he would be tortured if removed to Sri Lanka. The IJ specifically found that petitioner had not produced any of the types of evidence enumerated in § 208.16(c)(3). Petitioner's assertion that the IJ applied the wrong legal standard and required proof of past torture is not supported by the record.

Relying on *Bace v. Ashcroft*, 352 F.3d 1133 (7th Cir. 2003), petitioner also argues that the IJ erred in failing to shift to the government the burden of demonstrating whether he could relocate to a part of Sri Lanka where he would not face the likelihood of torture. In *Bace*, however, we only reviewed the denial of the petitioner's application for asylum and did not reach the denial of CAT protection. Furthermore, we explained in *Bace* that the burden shifts to the government in an asylum case only after the applicant has established that he has suffered persecution in the past or that his persecutor is a government or is government-sponsored. *Id.* at 1138 n.3, 1140; *see also* 8 C.F.R. § 208.13(b)(3)(ii). Where, however, "the applicant has not established past persecution, the applicant shall bear the burden of establishing that it would not be reasonable for him or her to relocate." 8 C.F.R. § 208.13(b)(3)(i). Even if this framework applies to CAT as well as asylum, the IJ correctly declined to shift the burden to the government because she explicitly found that petitioner had not presented evidence establishing past persecution or a well-founded fear of future persecution.

We turn finally to petitioner's argument that the IJ's ultimate conclusion is not supported by substantial evidence.

Looking first to petitioner's testimony, we hold that it falls short of the high burden for obtaining CAT protection. His description of past "harassment" and "scrutiny" by the police does not rise to the level of torture; we have denied CAT protection in far more compelling circumstances. *See, e.g.*, *Dandan v. Ashcroft*, 339 F.3d 567, 573-75 (7th Cir. 2003) (denying petition where the petitioner had been held without food, beaten, and interrogated for three days). Discrimination and taunts by private citizens also is not torture. *See Krasnopivtsev v. Ashcroft*, 382 F.3d 832, 839-40 (8th Cir. 2004). Finally, petitioner's most serious fear—that he will be asked to give money to the LTTE and that he will be shot if he refuses—is not supported by any evidence that he is likely to be treated more severely in the future than he was in the past. Torture is an "extreme" concept and petitioner's testimony simply fails to show the likelihood of any treatment that would rise to the level of torture.

In apparent recognition that he cannot meet his burden with his testimony alone, petitioner relies almost exclusively upon the U.S. State Department's 2000 Country Report for Sri Lanka in his petition for review. (Administrative Record ("AR") at 160.) This report describes a country deeply affected by the government's war with the LTTE. (*Id.*) According to the report, there are "serious human rights abuses by both sides of the conflict," though the human rights of Sri Lanka's citizens are "generally respected." (*Id.*) For example, torture and poor conditions are a "serious problem" in prisons, and there have been arbitrary arrests (including short-term mass arrests and detentions), extrajudicial killings, and disappearances. (*Id.*) The report describes one incident where Tamil citizens were targeted by the military:

> On December 19, [2000,] nine Tamil civilians were reported missing in Mirusuvil after being arrested by the Sri Lankan Army (SLA). One person escaped, and after checking himself into the local hospital for torture wounds, reported the incident to police and the local

> magistrate. The magistrate, accompanied by the police, took the person to the site where he and the other eight had been arrested and tortured. The escapee identified two SLA soldiers as the perpetrators, and the soldiers admitted to torturing nine civilians and murdering eight. The soldiers identified the place of burial, and the bodies were exhumed. On December 25, an additional SLA commissioned officer and six additional SLA soldiers were arrested for the torture and murders.

(*Id.* at 162.)

Though the country report supports the contention that torture occurs in Sri Lanka, it does not demonstrate that it is more likely than not that *petitioner* will be tortured if he returns. We have held that a country report which provides generalized evidence of political turmoil, civil strife, and human rights abuses in war-torn nations is an insufficient basis for granting asylum. *See*, *e.g.*, *Selimi v. Ashcroft*, 360 F.3d 736, 740-41 (7th Cir. 2004) (ethnic Albanian applicants for asylum or protection under CAT did not meet burden in offering a State Department country report showing that thirty percent of the population endured the difficult conditions cited by the applicants); *Balogun v. Ashcroft*, 374 F.3d 492, 506-07 (7th Cir. 2004) (IJ's denial of asylum was "within the substantial evidence boundary" where country report and bulletin on Nigeria cited thirty-five to forty-five percent incidence of female genital mutilation); *Ahmed v. Ashcroft*, 348 F.3d 611, 619 (7th Cir. 2003) (BIA was entitled to conclude that there was no objective threat to applicant in particular where country report suggested that few segments of Algerian society have been spared from violence). Given that the burden for CAT protection is even higher than for asylum, *Dandan*, 339 F.3d at 575 n.7, a country report that describes instances of torture unrelated to the applicant does not provide a basis for withholding removal without evidence that the applicant himself will be targeted. *Cf. Oforji*, 354 F.3d at 615 ("The language of the regulation

unambiguously permits withholding of removal due to torture *personally* suffered by the alien.") (emphasis added).

Our review of the record leads us to agree with the IJ and BIA that petitioner has failed to show that it is more likely than not that he will be subjected to torture if removed to Sri Lanka. The BIA's order applies the correct legal standard and its denial of withholding of removal under CAT is in accord with the evidence presented.


### III. Conclusion

The order of the BIA is AFFIRMED.


A true Copy:

       Teste:


                     _____
                     *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*