# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 04-2828

NAVEED AHMED SAHI,

*Petitioner*,

v.

ALBERTO GONZALES,

*Respondent.*

_____

On Petition to Review an Order of
the Board of Immigration Appeals.
No. A 78 265 021

_____

ARGUED JULY 5, 2005—DECIDED JULY 25, 2005

_____

Before BAUER, POSNER, and EASTERBROOK, *Circuit Judges*.

POSNER, *Circuit Judge*. The Board of Immigration Appeals denied Naveed Sahi's application for asylum and ordered him sent back to Pakistan, his country of origin. Sahi is a member of the Ahmadi religious sect. The Ahmadis consider themselves Muslims, but many Muslims disagree. The disagreement arises from the fact that Ahmadis do not accept, as most Muslims do, that Mohammed was the last prophet of Islam—they think that Mizra Ghulam Ahmad, who founded their sect in the nineteenth century, was also

a prophet of Islam. Pakistan considers the sect a pernicious heresy. In 1974 it officially declared that Ahmadis were not Muslims. According to the State Department's *Country Reports on Human Rights Practices—2004* (Feb. 28, 2005), the accuracy of which is not questioned by either party, "provisions of the [Pakistani] penal code prohibited Ahmadis from engaging in any Muslim practices, including using Muslim greetings, referring to their places of worship as mosques, reciting Islamic prayers, and participation in the Hajj [the pilgrimage to Mecca] or Ramadan fast. Ahmadis are prohibited from proselytizing, holding gatherings, or distributing literature. Government forms, including passport applications and voter registration documents, require anyone wishing to be listed as Muslim to denounce the founder of the Ahmadi faith . . . . Ahmadis were prevented from building houses of worship . . .[and] were the targets of religious violence." (Although written in the past tense, there is no suggestion that any of these laws or practices have changed since the 2004 Country Report.) Sahi himself, before leaving Pakistan, had been beaten by orthodox Muslims, who in addition had burned the crops of his family farm and stolen buffaloes from the farm. The police refused to protect him and his family from these criminal acts.

Nevertheless the immigration judge, seconded by the Board, ruled that Sahi had no well-founded fear of being persecuted should he be returned to Pakistan. Although the judge's oral opinion is meandering and none too clear, the heart of it seems to be the following sentence: "While this Court [i.e., the immigration judge] fully recognizes that Ahmadis are discriminated against and face harassment in Pakistan because of their religious beliefs, I do not find that this fact, coupled with the general risk of random violence singles the respondent out or establishes a pattern and

practice of persecution of all Ahmadis." What the immigration judge seems to be saying is (1) Ahmadis face discrimination and harassment but not persecution, because they are not subject to systematic violence; (2) unless "all" Ahmadis are persecuted, Sahi cannot obtain asylum without proving that he will be "singled out" for persecution if he returns to Pakistan. Elsewhere in his opinion the immigration judge said that "the respondent's situation is no different than any other Pakistani Ahmadi."

The judge neither defined "persecution" nor cited a decision by the Board, or for that matter any other source of guidance, on what constitutes, or should be deemed to constitute, persecution in an asylum case. Implicitly he defines it as systematic violence directed against a group, and so he pointed to a statement in an earlier Country Report that Pakistan is trying to curtail intimidation of religious minorities. His conception of persecution seems too limited. Suppose the Congress of the United States declared Catholicism a heresy and prohibited Catholics from engaging in any Christian practices, including referring to their places of worship as churches and reciting Christian prayers, and from proselytizing, holding religious gatherings, distributing religious literature, or building new churches—but also forbade religiously motivated violence against Catholics. The case for regarding the total package as persecution, even though vigilantism was forbidden and the authorities enforced the prohibition energetically— which Pakistan apparently does not—would be a strong one. This is apparent from cases which hold that forcing a person to practice his religion in secret is persecution. *Iao v. Gonzales*, 400 F.3d 530, 531 (7th Cir. 2005); *Muhur v. Ashcroft*, 355 F.3d 958, 960-61 (7th Cir. 2004); *Zhang v. Ashcroft*, 388 F.3d 713, 720 (9th Cir. 2004) (per curiam); see also *Huang v. Gonzales*, 403 F.3d 945, 947 (7th Cir. 2005). Judging from the

2004 Country Report, that is in effect the situation of Ahmadis in Pakistan.

Yet we do not hold that Sahi was a victim of persecution; we merely assume it in the absence of any effort by the Board of Immigration Appeals to define the word more narrowly than is plausible without the benefit of the Board's thinking. The primary responsibility for defining key terms in the immigration statute that the statutes themselves do not define, such as "persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1101(a)(42)(a), is that of the Board of Immigration Appeals as the Attorney General's delegate. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999); *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446-49 (1987); *Uritsky v. Gonzales*, 399 F.3d 728, 731-32 (6th Cir. 2005). The Board has failed to discharge that responsibility. Neither the parties' research nor our own has brought to light a case in which the BIA has defined "persecution." The Board's interpretation of "well-founded" fear of persecution as meaning that the alien was more likely than not to be persecuted if returned to his country of origin was rejected by the Supreme Court in the *Cardoza-Fonseca* case as a misinterpretation of the statute, but the Board had not attempted to define "persecution" itself. Similarly, although the Board in *In re A-M-*, 23 I.&N. Dec. 737, 740-41 (BIA 2005), adopted the definition in *Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005), of a "pattern or practice" of persecution as "persecution of a group that is 'systemic, pervasive, or organized,' " again it did not define "persecution." It said in *In re A-E-M*, 21 I.&N. Dec. 1157, 1159 (BIA 1998), that incidents of "harassment" do not constitute persecution, but did not explain the distinction between mere harassment and outright persecution. It has also said that "persecution" does not include "all treatment that society regards as unfair, unjust, or even

unlawful or unconstitutional," *In re V-T-S*, 21 I.&N. Dec. 792, 798 (BIA 1997), but has not said what it does include. We haven't a clue as to what it thinks religious persecution is.

We realize that no court has found that Ahmadis as a group suffer a "pattern and practice of persecution." *Ahmad v. INS*, 163 F.3d 457, 463 (7th Cir. 1999), remarked merely that they face "some level of mistreatment" in Pakistan. *Nasir v. INS*, 122 F.3d 484, 486, 488 (7th Cir. 1997), noted that "Ahmadis in general have suffered prejudice and discrimination in Pakistan ever since the country was founded in 1947," but found it unnecessary to decide "whether Ahmadis as a group are subject to persecution." *Hakeem v. INS*, 273 F.3d 812, 817 (9th Cir. 2001), noted State Department reports that Ahmadis were being tried for violating Pakistan's blasphemy law, but found that Hakeem "practiced his faith without incident" in Pakistan and had failed to prove that anyone in his family had ever been "charged, arrested, or physically harmed based on their Ahmadi faith." All these rulings were based on the facts presented in their specific cases. That Ahmad, Nasir, and Hakeem, none of whom had the benefit of the 2004 Country Report, did not prove that Ahmadis are persecuted does not mean that Sahi has failed to prove it. *Muhur v. Ashcroft*, *supra*, 355 F.3d at 959.

There are dicta that an alien cannot obtain asylum unless he proves that he has been or will be treated worse than other members of his group. *Ahmad v. INS*, *supra*, 163 F.3d at 463; *Ivezaj v. INS*, 84 F.3d 215, 221 (6th Cir. 1996); But besides being in the teeth of a regulation not claimed to be invalid, 8 C.F.R. § 208.13(b)(2)(iii); *Mekhoukh v. Ashcroft*, 258 F.3d 118, 124 (1st Cir. 2004); *Ramsameachire v. Ashcroft*, 357 F.3d 169, 183 (2d Cir. 2004); *Eduard v. Ashcroft*, 379 F.3d 182, 192 (5th Cir. 2004), these dicta cannot be correct; they imply

that a German Jew who sought asylum during the Hitler era would have to show that he would be treated even worse than other German Jews if he were returned to Germany. The immigration judge didn't quite fall into that trap, but his formulation—that unless all members of the group are being persecuted, the alien must show that he has been singled out—is also untenable. Suppose most members of some group are persecuted, but others are not—maybe they have relatives among the persecutors, or unique skills, or great wealth, and so obtain a special dispensation. (The Nazis spared some Jews because they were married to Gentiles.) It would not follow that a member of the group who sought asylum would have to prove that *he* was not one of the favored ones, especially if the favored were only a small percentage of the group. See *Lolong v. Gonzales*, 400 F.3d 1215, 1219-20 (9th Cir. 2005).

The denial of asylum cannot be sustained on this record. The petition for review is therefore granted and the case remanded to the immigration service.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*