In the

# United States Court of Appeals
### For the Seventh Circuit

No. 04-1126

YUAN RONG CHEN and YIN LIN,

*Petitioners,*

*v.*

ALBERTO R. GONZALES,

*Respondent.*

On Petition for Review of an Order of
the Board of Immigration Appeals.
Nos. A 73-181-138 & A 74-974-123

ARGUED DECEMBER 13, 2005—DECIDED AUGUST 8, 2006

Before BAUER, KANNE, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* Chinese national Yuan Rong Chen and his wife Yin Lin petitioned for asylum, withholding of removal, and protection under the Convention Against Torture, claiming that they feared persecution for resisting the government's one-child policy if forced to return to China. Before the immigration judge (IJ), they argued that Chen had suffered past persecution because: (1) he was expelled from school for voicing opposition to the birth-control policy, and (2) his former girlfriend was forced to abort a pregnancy with his child. They also argued that they both had a well-founded fear of future persecution based on the fact that they had two children and wished to have more. The IJ denied their petitions for asylum on all

three grounds, and the Board of Immigration Appeals (BIA) affirmed. Chen and Lin now petition for review of the BIA's decision. Because the evidence they present does not compel the conclusion that the BIA erred, we deny the petition.

## I.

Chen and Lin are both from Fujian province, but they entered the United States independently, on separate occasions, and filed separate applications for asylum. While their cases were pending in the immigration court, they married and gave birth to two daughters. The cases were consolidated before the final hearing on their asylum claims.

### A.  Chen

Chen was admitted to the United States on a visitor's visa in 1992 and overstayed. He petitioned for asylum in 1993, alleging that he was afraid to return to China because he had engaged in "anti-government activities during [a] student movement," and because he had left the country without permission. In a short statement appended to his asylum application, he identified himself without elaboration as an "opponent" of the one-child policy.

The Immigration and Naturalization Service did not act upon his request for asylum until May 1996, when it rejected his petition and initiated deportation proceedings. Then, in September 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), which expanded the definition of "refugee" to include, under the rubric of political opinion, persons who were forced to abort a pregnancy or were involuntarily sterilized, or who were persecuted for other resistance to a "coercive population control program," *see* 8 U.S.C. § 1101(a)(42). Attempting to take advantage of these

provisions, Chen filed a "supplemental statement of asylum," claiming that he was dismissed from school "for spreading [anti-birth-control-policy] propaganda among the students," and that little more than a year after his expulsion, his then-girlfriend was ordered and actually compelled by family-planning authorities to have an abortion. With his supplemental statement, Chen submitted a disciplinary warning from the school, his notice of expulsion, the order from family-planning officials to have the abortion, and a certificate attesting that his girlfriend had done so.

At the hearing before the IJ, Chen elaborated on his statements about his expulsion from school and his girlfriend's abortion. He testified that his resolve to protest the one-child policy stemmed from a class discussion in which he voiced his disagreement with the policy and discovered that others in the class agreed with him. Three days later, he wrote an "article" on a blackboard in "the family plaza" expressing his "indignation against this abortion and sterilization" and got a number of his classmates to sign it with him. The school's administration warned him to stop his "group activities," but he refused. After writing three more such "articles," he was expelled from school.

The following year, according to Chen, he began a relationship with a woman named Li Ping. He testified that they attempted to register for marriage but were refused a license because they were underage. Li Ping then moved into Chen's family home, but in Chen's own words, their living together was "just a cohabitation."

In the fall of that year, Li Ping became pregnant. Chen and Li Ping decided that they wanted to have the baby. Thinking they might be granted permission to marry because of the pregnancy, and knowing they could not receive a birth permit without it, they reapplied for a marriage license. Instead they received a letter from the "town government" demanding that Li Ping voluntarily

submit to abortion within ten days or she would be "force[d]" to have one and they would both be fined as well. As it happened, however, the family-planning authorities did not wait ten days. While Chen was away, preparing for them both to go into hiding, three family-planning officials took Li Ping to the hospital to have the abortion. Afterwards, Li Ping returned to live at her mother's house. Chen departed China approximately nine months later.

## B. Lin

Lin entered the United States without a valid visa in February 1996 and was immediately arrested. In her first statement to immigration officials at her airport interview, she said she had come to live with her father (who came to this country seeking asylum in 1993) and that she wanted "the opportunity to advance [her]self." She petitioned for political asylum in July, claiming that she feared persecution because of her parents' resistance to the one-child policy and because her father had twice "tried to escape from China." She stated that her mother was forced to have an abortion in 1980 and was later sterilized against her will, and that her father was sterilized while in prison in 1983 as punishment for attempting to leave the country.

At the hearing before the IJ, Lin testified that she came to the United States because she wanted to avoid the persecution her parents had suffered and because her father had been seriously injured in a traffic accident and needed her care. She did not contend that she herself had suffered any harm under the one-child policy, but she expressed fear that if returned either she or Chen would be sterilized for violating the family-planning laws. Lin also claimed that she sought asylum because she wanted to have more children and because she was afraid of being imprisoned and fined for leaving the country illegally.

The IJ determined that neither Chen nor Lin had suffered past persecution, and that together they failed to demonstrate a well-founded fear of future persecution. He refused to credit Chen's account of his expulsion from school or his former girlfriend's forced abortion, and further determined that his allegations, even if true, did not amount to persecution as a matter of law. In addition, the IJ rejected as too speculative to be well founded both petitioners' fears that they would be subject to future persecution because of the birth of their second child. The BIA agreed with the IJ that Chen and Lin failed to meet their burdens of establishing eligibility for asylum.

## II.

Although the BIA did not affirm "without opinion" in the terms of 8 C.F.R. § 1003.1(e)(4)(ii), because its opinion contains no explanation of the basis for its decision, we treat the IJ's opinion as if it were that of the BIA. *See Dobrican v. INS*, 77 F.3d 164, 167 (7th Cir. 1996); *see also Liu v. Ashcroft*, 380 F.3d 307, 311 (7th Cir. 2004). We review for substantial evidence, *Mabasa v. Gonzales*, 440 F.3d 902, 906 (7th Cir. 2006); *Koval v. Gonzales*, 418 F.3d 798, 804 (7th Cir. 2005), and will uphold the IJ's determination that the petitioners are not eligible for asylum unless we are compelled to conclude that they had the requisite fear of persecution, *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992); *Margos v. Gonzales*, 443 F.3d 593, 597 (7th Cir. 2006).

### A. Adverse Credibility Determination

Chen and Lin first attack the IJ's decision by arguing that the IJ improperly dismissed Chen's evidence of past persecution. They contend that the IJ's reasoning lacks cogency because the inconsistencies he identified are

minor or easily explained—the sort of inconsistencies we have considered insufficient to support an adverse credibility finding. *See Shtaro v. Gonzales*, 435 F.3d 711, 716 (7th Cir. 2006); *Lhanzom v. Gonzales*, 430 F.3d 833, 848 (7th Cir. 2005).

We agree that the inconsistencies are not significant. The IJ's primary concern appears to be that Chen "changed" his "story" because he failed to mention in his initial asylum application his former girlfriend's abortion or his expulsion from school. But a reasonable factfinder would have been compelled to accept Chen's explanations for the omissions. First, when he filed his asylum application—in 1993, almost three years before IIRIRA recognized an involuntary abortion as a ground for asylum—he had no reason to think mentioning Li Ping's abortion might be important. Second, he claimed that the paralegal who helped him complete his asylum application told him that he did not "have to show a lot of details, just some general abstract ideas." The abstract nature of the statement he attached to his asylum application bears out this claim: the statement criticizes the birth-control policy generally rather than describing his experience of persecution. However, the outcome of this case does not depend on the validity of the adverse credibility determination because Chen's claims do not rise to the level of persecution as a matter of law.

### B. Past Persecution

Chen argues that he was persecuted on account of his political opinion when he was expelled from school for opposing the birth-control policy. Expulsion from school has been accepted as one factor among several supporting a claim of persecution. *See Kimumwe v. Gonzales*, 431 F.3d 319, 322 (8th Cir. 2005); *Niam v. Ashcroft*, 354 F.3d 652, 658 (7th Cir. 2004); *Gao v. Ashcroft*, 299 F.3d 266, 268 (3d Cir. 2002). Considered as the sole basis of the claim, however, at least in this case, it does not come close to

meeting the required standard. There is no statutory definition of persecution, and the BIA has not yet developed any definition of its own, *see Haile v. Gonzales*, 421 F.3d 493, 496 (7th Cir. 2005); *Sahi v. Gonzales*, 416 F.3d 587, 588-89 (7th Cir. 2005), but we have repeatedly held that persecution must involve more than mere harassment or mistreatment, *see, e.g.*, *Koval*, 418 F.3d at 805. Chen does not demonstrate that he sustained any harm at all from his expulsion.

Chen also argues that he suffered past persecution because Li Ping was forced to have an abortion. He points to the Ninth Circuit's decision in *Ma v. Ashcroft*, 361 F.3d 553, 561 (9th Cir. 2004), holding that the protections of 8 U.S.C. § 1101(a)(42) apply to "husbands" who are married in traditional ceremonies but cannot legally register their marriages because they or their spouses are underage. Since Chen and Lin's case was argued, we have joined the Ninth Circuit in extending protection to spouses in cases "[w]here a traditional marriage ceremony has taken place, but is not recognized by the Chinese government because of the age restrictions in the population control measures." *See Zhang v. Gonzales*, 434 F.3d 993, 999 (7th Cir. 2006). However, no court yet has recognized an unmarried male partner like Chen as a "refugee" under § 1101(a)(42)'s forced abortion and sterilization provisions, and two circuits have held unequivocally that boyfriends do not qualify. *See Chen v. Ashcroft*, 381 F.3d 221, 227-29 (3d Cir. 2004); *Zhang v. Ashcroft*, 395 F.3d 531, 532 (5th Cir. 2004) (holding that "merely impregnating one's girlfriend is not alone an act of 'resistance'"). *But see Lin v. United States Dep't of Justice*, 416 F.3d 184, 187 (2d Cir. 2005) (remanding petitions to BIA for clarification "whether, when, and why boyfriends and fiancés" may be protected). Like our sister circuits, we decline to extend the definition of "refugee" to reach boyfriends.

### C. Well Founded Fear

For her part, Lin argues that while she has no claim of past persecution, she has a well-founded fear of future persecution because she has already borne more children than the family-planning policy allows. But an asylum applicant cannot prevail unless she can show both that she subjectively fears persecution and that there is an objectively reasonable possibility she will be persecuted. *See* 8 C.F.R. § 208.13(b)(2); *Koval*, 418 F.3d at 804-05. She must show either that she will be "'singled out'" for persecution or that she is a member of a group against whom there has been a demonstrated "'pattern or practice of persecution.'" *Koval*, 418 F.3d at 804-05 (quoting *Capric v. Ashcroft*, 355 F.3d 1075, 1085 (7th Cir. 2004)). Lin points only to her parents' sterilizations, and to State Department reports reflecting that forced abortions and sterilizations "continue[ ] to occur in some rural areas." However, "generalized evidence" in a country report is an "insufficient basis for granting asylum," *see Rashiah v. Ashcroft*, 388 F.3d 1126, 1133 (7th Cir. 2004); *Selimi v. Ashcroft*, 360 F.3d 736, 740-41 (7th Cir. 2004), and Lin's parents were sterilized many years ago under circumstances bearing no relation to her present circumstances, *see Huang v. United States INS*, 421 F.3d 125, 128-29 (2d Cir. 2005) (per curiam) (rejecting as "too speculative" petitioner's claim that she feared persecution for having two American-born children where claim was supported only by country reports and vague testimony that sister-in-law was forcibly sterilized).

Finally, both Chen and Lin argue that the IJ erred in failing to consider their claims that they will be punished for departing the country illegally. But they did not raise this claim before the BIA; consequently, it is forfeited. *See Feto v. Gonzales*, 433 F.3d 907, 912 (7th Cir. 2006).

### III.  Conclusion

The petition for review is denied.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*