**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 17, 2008
Decided January 15, 2009

**Before**

WILLIAM J. BAUER, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 08-1942

| | |
|---|---|
| ADRIAN TURANGAN, | Petition for Review of an Order of the |
| *Petitioner*, | Board of Immigration Appeals. |
| | |
| *v.* | No. A96 265 850 |
| | |
| MICHAEL B. MUKASEY, Attorney | |
| General of the United States, | |
| *Respondent*. | |

## O R D E R

Adrian Turangan, a native and citizen of Indonesia, came to the United States in 2002 as a temporary visitor and overstayed his visa. One year later he applied for asylum, withholding of removal, and protection under the Convention Against Torture, citing a fear of persecution and torture on account of his religion (Christianity) and political opinion. An immigration judge denied Turangan's application, finding that he could show neither past persecution on account of his religion or political opinion, nor a well-founded fear of future persecution. The Board of Immigration Appeals affirmed, and Turangan petitions for review. Because the rulings of the BIA and the IJ were supported by substantial evidence,

we deny the petition.

Turangan was born in Manado, Indonesia and belongs to the Minahasa ethnic group. He was raised a Pentecostal Christian. He arrived in the United States on a six-month B2 visa, overstayed, and then sought asylum, withholding of removal, and relief under the Convention Against Torture. Much of the information he submitted with his asylum application is vague and confusing, but the following facts highlight the most significant incidents of persecution he claims to have experienced. The first incident occurred in 1983 or 1984 when his father, a Pentecostal minister, was "murdered" outside his church by two Muslim attackers who hit him in the head and neck with a sickle after he refused their demand for money. Turangan believes that the attack came about because his father was a Christian who also looked Chinese. Turangan testified that he is not ethnically Chinese, but he identifies himself as being of "Chinese descent" and states that most people from Manado look Chinese and are therefore subject to persecution by native Indonesians. Turangan's father, who died six months after being injured in the attack, did not report this incident to the police because he feared that a report would lead to an attack on his church.

The next incidents occurred many years later. In 1990 Turangan was attacked by two Muslim men, who followed him off of a public bus and demanded money from him at knife-point. Turangan refused to give the men any money and as a result was knifed in the hand. Years later, in 1997, during a housewarming party at Turangan's home attended by his church friends, a Muslim neighbor "dropped" Turangan's then-three-year-old son on the road in front of Turangan's house. The circumstances are murky, but Turangan's housekeeper told him that his Muslim neighbor did this intentionally to force Turangan and his family out of the neighborhood. Years after, Muslim children in Turangan's neighborhood "beat up" his son and daughter on account of their religion; Turangan's son was treated for a broken hand, and his daughter received head injuries.

Turangan also says he experienced persecution because of his membership in the Indonesian Democratic Party ("PDI"), a Christian political party. In 1999, supporters of a rival Muslim political party saw Turangan driving a car bearing a PDI bumper-sticker and a cross hanging from the rear-view mirror. The Muslim supporters yelled, "Here's a supporter of the infidel party," and attacked Turangan's car with "metal bars" and "blades." When Turangan asked an army officer whether he should report the attack, the officer told him that no one would investigate the incident because the attackers were supporters of a Muslim political party. Later that year, Turangan and fellow PDI supporters were driving in a convoy when a car bomb exploded in a jeep 20 meters away from Turangan. According to Turangan, the car bombing made him realize that PDI membership endangered his life.

Turangan says that religious persecution continued in 2000 when the government closed his church and his mother's church (where she served as a Pentecostal minister) was burned down. Between 2001 and 2002, Turangan's wife was robbed twice and his mother was robbed once. Turangan, however, does not expressly state that these robberies were motivated by ethnicity and religion. Since Turangan's departure from Indonesia, his wife, children, and mother have remained in Indonesia.

The IJ denied Turangan's applications for asylum, withholding of removal, and protection under the Convention Against Torture. The IJ summarized 18 separate incidents that Turangan provided as evidence of past persecution, but determined that Turangan failed to establish that the alleged acts of persecution were based on his religion or political opinion. The IJ found that at least five of the incidents were criminal acts, which were unrelated to Turangan's religion, political opinion, or ethnicity. The IJ also found, with respect to incidents not reported to the police, that there was no evidence that the Indonesian government condoned the acts; other alleged acts of harassment were unsupported by evidence. The IJ also noted that no acts of alleged persecution occurred between the time Turangan returned to Indonesia from his second visit to the United States in 2001 or early 2002 and when he left for the United States for the third time in April 2002. The IJ questioned whether Turangan's fear of persecution was reasonable, given that his family remains unharmed in Indonesia. Based on the evidence presented, the IJ determined that Turangan's fear of persecution was not subjectively genuine or objectively reasonable. The IJ determined that, because Turangan failed to satisfy the lower burden of proof required for asylum, he could not satisfy the more stringent standard (clear probability of persecution) required for withholding of removal. Finally, the IJ determined that Turangan did not present sufficient evidence to show that he would be tortured if removed as required for protection under the Convention Against Torture.

Turangan appealed to the Board of Immigration Appeals, which dismissed the appeal. The BIA agreed with the IJ's finding that Turangan failed to show that the Indonesian government was unable or unwilling to protect him if he returns to Indonesia. The BIA also noted that Turangan's family has remained in Indonesia unharmed.

On appeal Turangan argues that the IJ and BIA erred in denying his application for asylum, request for withholding of removal, and request for protection under the Convention Against Torture because he presented sufficient evidence of past persecution. Turangan does not point to specific findings or determinations by the IJ or BIA that were in error. His brief essentially restates many of the facts he provided in his asylum application and in his testimony at the removal hearing.

Because the BIA relied on the IJ's decision when it dismissed Turangan's appeal of the final order of removal, we review the IJ's decision as supplemented by the BIA. *See Oryakhil v. Mukasey*, 528 F.3d 993, 998 (7th Cir. 2008); *Khan v. Mukasey*, 517 F.3d 513, 517 (7th Cir. 2008). This court will uphold the denial of relief if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992); *see Chatta v. Mukasey*, 523 F.3d 748, 752 (7th Cir. 2008).

In order to be eligible for asylum, an applicant has the burden to establish that he is a "refugee," Immigration and Nationality Act, 8 U.S.C. § 1158(b)(1), which is defined as an individual who is unable or unwilling to return to his home country because of past persecution or a well-founded fear of future persecution on the basis of "race, religion, nationality, membership in a particular social group, or political opinion," Immigration and Nationality Act, 8 U.S.C. § 1101(a)(42). An asylum applicant who proves past persecution is entitled to a rebuttable presumption that he has a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1); *see also Haxhiu v. Mukasey*, 519 F.3d 685, 690 (7th Cir. 2008). This court has defined persecution as the "'punishment or the infliction of harm for political, religious, or other reasons that this country does not recognize as legitimate.'" *Zeqiri v. Mukasey*, 529 F.3d 364, 370 (7th Cir. 2008) (internal citation omitted).

Turangan argues that he presented evidence of past persecution on the basis of his Chinese descent, his religion, and his political affiliation. He states that he was persecuted on the basis of his Chinese descent when two Muslim men attempted to rob him at knife-point and when his car was ambushed, resulting in smashed windows. As for his claim of persecution based on religion, he points to the fatal attack on his father by two Muslim men demanding money and the harassment from his Muslim neighbors, which included attacks on his children. Finally, regarding his claim of political persecution, Turangan states that he was forced to relocate, was attacked in his car by a members of a Muslim political party, and was in close proximity to a car-bombing of a fellow PDI member.

Turangan is ineligible for asylum based on past persecution for three reasons. First, he fails to establish that he is a refugee under the Immigration and Nationality Act. *See* 8 U.S.C. §§ 1101(a)(42)(A); 1158(b)(1). Although Turangan and his family may have suffered harm, demonstrating persecution is only part of his burden. *See Jun Ying Wang v. Gonzales*, 445 F.3d 993, 998 (7th Cir. 2006). The more critical part is the statutory requirement that persecution be "on account of" one of the protected grounds of "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *see Elias-Zacarias*, 502 U.S. at 482-83; *Jun Ying Wang*, 445 F.3d at 998. Turangan did not present sufficient evidence linking any of the alleged incidents of persecution to his race, ethnicity, religion, or political opinion.

Second, the incidents recited by Turangan amount merely to instances of harassment, which do not rise to the level of persecution because they were not so severe that they constituted a threat to life or freedom. *See Kaharudin v. Gonzales*, 500 F.3d 619, 623 (7th Cir. 2007); *Mabasa v. Gonzales*, 455 F.3d 740, 746 (7th Cir. 2006). The robberies of his father, his wife, his mother, and Turangan himself, as well as the attacks on Turangan's children and Turangan's car, were simply random, isolated criminal acts that do not establish persecution. *See Lie v. Ashcroft*, 396 F.3d 530, 536 (3d Cir. 2005).

Finally, because he did not report any of the alleged incidents of persecution to the authorities, Turangan cannot show that the government was unwilling or unable to prevent attacks committed by private citizens. *See Chakir v. Gonzales*, 466 F.3d 563, 570 (7th Cir. 2006); *Hor v. Gonzales*, 421 F.3d 497, 502 (7th Cir. 2005); *Makatengkeng v. Gonzales*, 495 F.3d 876, 885 (8th Cir. 2007). Turangan cited various reports and news stories of religious violence to show that the Indonesian government was unwilling and unable to prevent any acts of persecution against him, but none of these materials pertains to him personally and they are thus too general to be of any value. *See Chen v. Gonzales*, 457 F.3d 670 , 674 (7th Cir. 2006).

Because Turangan's asylum application was properly denied, he cannot meet the more stringent test for withholding of removal. *See Soumare v. Mukasey*, 525 F.3d 547, 552 (7th Cir. 2008). He has also failed to show that it is more likely than not that he would be tortured if returned to Indonesia, so his Convention Against Torture claim fails as well. *See* 8 C.F.R. §§ 208.16(c), 208.18; *LaGuerre v. Mukasey*, 526 F.3d 1037, 1040 (7th Cir. 2008).

For these reasons, we deny Turangan's petition for review.