BAUER, Circuit Judge.
Siphathiso Mabasa, a teacher from Zimbabwe, applied for asylum on behalf of himself and his wife and daughter, Maureen and Sinobukhosi Mabasa. The Maba-sas request review of a Board of Immigration Appeals (“BIA”) order affirming the denial of their application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (“CAT”). For the reasons set forth in this opinion, we affirm the decision of the BIA.
I. Background
The Mabasas are natives and citizens of Zimbabwe. Siphathiso Mabasa entered the United States as a nonimmigrant visitor on December 28, 1999. His wife and daughter, Maureen and Sinobukhosi, entered as nonimmigrant visitors approximately three months later, on March 9, 2000.
In Zimbabwe, Mr. Mabasa was a schoolteacher and a member of the Zimbabwe Teachers Association and the Zimbabwe Congress of Trade Unions (“ZCTU”). An offshoot of the ZCTU eventually became the Movement for Democratic Change (“MDC”), which is now the minority political party in Zimbabwe.
Mr. Mabasa became an active member of the MDC in September of 1999 by assisting in fund-raising and recruiting for the organization. He said that his MDC activities made him fearful of staying in Zimbabwe. In November of 1999 he was verbally threatened by the Youth Chairman of the Zimbabwe African National Union-Patriot Front (the ruling party in Zimbabwe) and at that point felt he needed to flee the country. In late December of 1999, over a month after he had been threatened and three months after joining the MDC, he left the country to come to the United States. In 2001, he reactivated his MDC membership in the United States and started to recruit new members and fund-raise on behalf of a local Indiana *905 chapter of the MDC. Mr. Mabasa confirmed that one-third of Zimbabwe’s population are members of the MDC and that the MDC controls 57 of the 120 seats in Zimbabwe’s parliament.
According to the Mabasas’ affidavits, after Mr. Mabasa left Zimbabwe, ruling party supporters came to their home and to Mrs. Mabasa’s work to find out about her husband’s activities and location. Mrs. Mabasa stated that during the visits she was pushed around and threatened with various forms of violence against her daughter and herself. Further, Mrs. Ma-basa claimed she began receiving threatening and harassing phone calls inquiring into her husband’s whereabouts. Mrs. Mabasa feared for her life and left the Mabasas’ home to stay elsewhere. Finally, she and Sinobukhosi left Zimbabwe to join her husband in the United States on March 9, 2000.
Mr. Mabasa’s brother, Gibson Ncube Mabasa, explained at the asylum hearing that he had received threats to his brother’s life back in Zimbabwe. After visiting the Mabasas in the United States, Gibson returned home to Zimbabwe on October 24, 2001. A few days after Gibson returned to Zimbabwe he said he was visited by men from the Central Intelligence Organization (“CIO”) who questioned him about his brother, Mr. Mabasa. The CIO officers told Gibson that they would kill his brother when he returned to Zimbabwe because of his MDC membership. The threat’s timing coincided with Mr. Maba-sa’s renewed fund-raising and recruiting efforts on behalf of the MDC in Indiana. On November 20, 2001, Gibson sent a letter to the Mabasas, warning them that government authorities were looking for Mr. Mabasa and that they wanted him “dead or alive.”
The Mabasas explained that, in the past, members of their family who were involved in the MDC were tortured or killed by the ruling party. Mrs. Mabasa’s father was killed by government supporters on December 18, 2000 and her uncle, a commander in the military, was tortured by President Robert Mugabe’s government in the mid-1980’s and died of his injuries.
The Mabasas filed for asylum, withholding of removal, and for protection under the CAT. The filing of their application was not within the one-year statutory deadline, as required by 8 U.S.C. § 1158(a)(2)(B) to be considered timely. The Mabasas do not contest the tardiness of their motion. They do argue, however, that there are three factors that make their situation one of changed circumstances, which can excuse the late filing. See 8 U.S.C. § 1158(a)(2)(D); 8 C.F.R. § 208.4(a)(4). First, the Mabasas cite Mr. Mabasa’s renewed efforts on behalf of the MDC, which began three months before he sought asylum. Second, the Mabasas underscore the deterioration of the Zimbabwe political climate in the months before they filed for asylum. Finally, the Maba-sas point to the Zimbabwe government’s recent interest in Mr. Mabasa’s activities in the United States.
II. Analysis
Asylum applications must be filed within one year after the date of the asylum seeker’s arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). Here, the Maba-sas filed for asylum two years too late. To overcome this statutory bar they must demonstrate either the existence of changed circumstances that materially affect their eligibility for asylum or extraordinary circumstances relating to the delay in filing the petition, 8 U.S.C. § 1158(a)(2)(D); 8 C.F.R. § 208.4(a)(4), (5).
Pursuant to 8 U.S.C. §■ 1158(a)(3), courts have no jurisdiction to review a determination that an asylum application is *906 barred due to noncompliance with the statutory time limit or the denial of one of the statutorily allowed excuses. However, the REAL ID Act of 2005, among other legal changes, conferred explicit jurisdiction on this court for appellate review of constitutional claims and questions of law. See REAL ID Act of 2005, § 106(a)(1)(h), amending 8 U.S.C. § 1252(a)(2). Pub.L. No. 109-13, 119 Stat. 231, 310-11 (2005).
In this case, the Mabasas allege a due process violation in their appeal to the BIA. The Mabasas contend that they were not afforded a meaningful opportunity to be heard since the BIA wrongly analyzed their claim as one of extraordinary circumstances when, in fact, they have argued all along that them ease is one of changed circumstances. Given the BIA’s error, under the REAL ID Act we have jurisdiction to consider the Mabasas’ claim. While the BIA mistakenly characterized the Mabasas’ excuse as one of extraordinary circumstances, the Immigration Judge (“IJ”) properly addressed their petition as one claiming changed circumstances. We review claims for asylum, withholding of removal, and relief under CAT using the substantial evidence standard. Ahmed v. Ashcroft, 348 F.3d 611, 615 (7th Cir.2003). With this standard, we assess whether the BIA’s determination was “supported by reasonable, substantial, and probative evidence on the record considered as a whole.” Id. (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)). We overturn the BIA’s decision only if “the record compels a contrary result.” Brucaj v. Ashcroft, 381 F.3d 602, 606 (7th Cir.2004) (citing Georgis v. Ashcroft, 328 F.3d 962, 967-68 (7th Cir.2003)). We review the BIA’s legal conclusions de novo. Ahmed, 348 F.3d at 615. Aside from the BIA’s mistaken characterization of the Mabasas’ claim, it summarily adopted the IJ’s conclusions and its ultimate decision. As a result we will review the IJ’s decision directly under the same standards set forth for the BIA. See Balogun v. Ashcroft, 374 F.3d 492, 498 (7th Cir.2004).
While it is true that the BIA was careless in wording its decision that affirmed the IJ’s opinion in this case, the error was harmless as the IJ was correct in denying the Mabasas’ asylum application. Thus, under either of the statutorily provided excuses, extraordinary circumstances or changed circumstances, the Mabasas would have lost them asylum claim. Mr. Mabasa asserts that his situation constitutes changed circumstances because the political climate in Zimbabwe worsened since he was in the United States and because members of the ruling party have recently become interested in Mr. Mabasa’s efforts on behalf of the MDC in Indiana. These events, however, do not constitute changed circumstances under the statutory meaning of the term. The Mugabe government and the oppressive climate that it engenders is the same today as when the Mabasas left Zimbabwe. The State Department Country Report for 2004 suggests that since President Mugabe and his undemocratic regime have been in power for 25 years, their control over the government through an election that was deemed to be neither free nor fair is not a new or a changed circumstance, but rather (and unfortunately) business as usual.
Further, the fact that Mr. Mabasa became active again in the MDC does not support a finding of changed circumstances since it was his very activity in the MDC that made him flee Zimbabwe originally. The proper time for Mr. Mabasa to file his asylum claim was in the year 2000. His contentions do not represent changed circumstances. Instead, they appear to be the same circumstances. Therefore, we affirm the BIA’s denial of the Mabasas’ asylum claim.
*907 The Mabasas next argue that the BIA erred in finding that they were not entitled to withholding of removal or for protection under the CAT. Because the BIA summarily affirmed the IJ’s decision, it constitutes the final agency determination for purposes of our review. Balogun, 374 F.3d at 498. The Court reviews agency decisions to deny requests for withholding of removal under the highly deferential substantial evidence standard. Uwase v. Ashcroft, 349 F.3d 1039, 1041 (7th Cir.2003). For the Court to reverse the IJ’s decision, Mr. Mabasa must show that “the evidence not only supports that conclusion, but compels it.” INS v. Elias-Zacarias, 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (emphasis in original).
To establish eligibility for withholding of removal, an applicant must show that his or her “life or freedom would be threatened in the proposed country of removal.” INA § 241(b)(3), 8 C.F.R. § 1208.16(b). The INA does not require withholding if an applicant “ ‘might’ or ‘could’ be subject to persecution.” INS v. Stevie, 467 U.S. 407, 422, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984). In fact, an applicant must establish a “clear probability” of persecution to avoid deportation. Id. at 413, 104 S.Ct. 2489. A clear probability can be shown if the applicant can demonstrate that “ ‘it is more likely than not that the alien would be subject to persecution.’” INS v. Cardozar-Fonseca, 480 U.S. 421, 423, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (quoting Stevic, 467 U.S. at 429-30, 104 S.Ct. 2489).
The BIA agreed with the IJ’s finding that Mr. Mabasa failed to establish a clear probability of persecution. Mr. Mabasa, while establishing that some of his family members were harmed by the government on account of their MDC membership, does not show that he likewise would be harmed by the government on account of his political opinion. The Mabasas’ family that was harmed by the government were either leaders in the MDC or influential business and landowners, not just members in the MDC. Mr. Mabasa’s involvement in the MDC, in comparison, is minor and he has not described himself as an influential businessman or landowner in Zimbabwe. Although persecution of an applicant’s family may be relevant in determining whether an applicant’s fear of persecution is well-founded, this court has held that a claim of “derivative persecution,” without additional evidence that a respondent himself or herself would be subjected to future persecution, does not establish a well-founded fear of persecution. See Tamas-Mercea v. Reno, 222 F.3d 417, 424 (7th Cir.2000); Najafi v. INS, 104 F.3d 943, 947 (7th Cir.1997).
Further, after thorough analysis, the IJ concluded that Mr. Mabasa had failed the lower burden of proof required for asylum. Thus, it logically follows that the Mabasas failed to satisfy the more stringent clear probability of persecution standard required for withholding of removal. See Marquez v. INS, 105 F.3d 374, 382 (7th Cir.1997). Consequently, we affirm the BIA’s decision denying the Mabasas’ application for withholding of removal.
Finally, the Mabasas argue they are eligible for withholding of removal under the CAT. An applicant for withholding of removal under the CAT bears the burden of proving that it is “more likely than not that he or she would be tortured if removed to the proposed country of removal.” 8 C.F.R. § 1208.16(c)(2). Torture is defined as “any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person ... with the consent or acquiescence of a public official.” Rashiah v. Ashcroft, 388 F.3d 1126, 1131 (7th Cir.2004) (citing 8 C.F.R. § 208.18(a)(1)). Acquiescence requires that the public official have prior *908 awareness of the activity and thereafter breach his or her legal responsibility to intervene to prevent such activity. 8 C.F.R. § 1208.18(a)(7).
The IJ found that Mr. Mabasa did not present sufficient evidence to support his claim that he would be tortured. She held that Mr. Mabasa did not meet the standard of showing that it is “more likely than not” that he would be tortured if removed to Zimbabwe. Therefore, the BIA was correct in affirming the denial of Mr. Ma-basa’s request for withholding of removal under the CAT.
III. Conclusion
The IJ’s and BIA’s decisions regarding the Mabasas. are Affirmed and their petition for review is denied.