UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 14, 2006
Decided August 2, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 05-3420

| | |
|---|---|
| AURELIO S. LOPEZ VASQUEZ,<br>*Petitioner,* | Petition for Review of an Order of the<br>Board of Immigration Appeals |
| *v.* | No. A79-587-506 |
| ALBERTO R. GONZALES,<br>*Respondent.* | |

**O R D E R**

Aurelio Lopez Vasquez, a Guatemalan native who entered the United States illegally in 1998, applied for asylum in 2001, too late to be eligible for asylum. An IJ ruled that although Lopez Vasquez could apply for withholding of removal, he had failed to make the necessary showing of a clear probability of persecution. Lopez Vasquez appealed to the BIA, arguing that his failure to demonstrate such a

probability of persecution was due to the ineffective assistance of counsel. The BIA affirmed, and he petitions this court for review of that order. Because Lopez Vasquez failed to meet his burden of proof for the withholding of removal, we deny his petition for review.

## I. Background

The facts of this case are undisputed. At his hearing before the IJ, Lopez Vasquez testified that he was from the town of El Rodeo, Guatemala, where he had worked on a plantation harvesting coffee. His cousin, Mario Vasquez, who worked nearby, ran a sideline business selling chickens to Guatemalan National Revolutionary Unity (URNG) guerillas based nearby. Lopez Vasquez testified that he did not provide food to the guerillas himself, but was aware of his cousin's activity. So too, according to Lopez Vasquez, was the Guatemalan government. Lopez Vasquez testified that he was walking to work with Mario Vasquez in late 1989, when seven men with masks and "high caliber arms" appeared and seized his cousin. The kidnappers saw Lopez Vasquez, but he fled and hid among the coffee plants. About two days later in El Rodeo, he saw them again. He recognized them as the kidnappers because of their build, their clothing, and the mud that had splattered their pants and shoes when they threw Mario Vasquez to the ground. He reported the men to the police, who took no action. Lopez Vasquez was later told that the men worked for G-2, a Guatemalan paramilitary unit. Approximately a week after Lopez Vasquez saw the G-2 operatives in town, Mario Vasquez's body was found on the roadside, mutilated and bearing signs of torture. The same men Lopez Vasquez had seen in town then came to his house and questioned his parents about him; Lopez Vasquez testified that they "thought I was participating in that kind of work that my cousin was doing." In early 1990, about two months after Mario Vasquez's murder, Lopez Vasquez fled to Mexico.

Lopez Vasquez stayed in Mexico for a year, and returned to Guatemala in 1991 "hoping things will be better." But men again came to his parents' home looking for him, saying that they learned he had returned. So Lopez Vasquez returned to Mexico, where he resided illegally for seven years. But even in Mexico, Lopez Vasquez testified, armed men tracked him down. Men with weapons, who he speculated were G-2 agents, came looking for him once while he was living in Mexico, and at least one more time after he left. After the first visit to his home in Mexico, he fled to the United States, where he resided for two years before applying for asylum.

Lopez Vasquez conceded at his hearing that he was ineligible for asylum because his application was late, but attempted to establish that he was entitled to withholding of removal because he reasonably feared that he would be killed for his "imputed political opinion" if he were returned to Guatemala. Lopez Vasquez

testified that he feared harm because he had recognized the G-2 agents: "I think they will kill me so that I will not report them." He said that his parents warned him in 1998 not to return because people were still looking for him. On cross-examination, however, Lopez Vasquez admitted that his son has been living without incident in Guatemala since 1998. This was possible, he said, because his son was an unregistered Mexican immigrant and had his mother's surname.

The IJ found that Lopez Vasquez did not have a sufficient excuse for filing his asylum application outside the one-year time limit, and restricted his analysis to Lopez Vasquez's claim for withholding of removal. Merely alleging a fear of future persecution, the IJ noted, was insufficient to meet Lopez Vasquez's burden of proof. The IJ explained that Lopez Vasquez's purported fear of future persecution was weakened by four facts: (1) Lopez Vasquez never actually saw the faces of the men who attacked his cousin; (2) Lopez Vasquez never established that those men spoke to or confronted him at the time; (3) the murder of Mario Vasquez occurred fifteen years before the removal hearing, during a civil war in which Lopez Vasquez took no part; and (4) according to the State Department report, the URNG guerillas had disbanded and joined the government after the civil war ended with a peace accord in 1996. Moreover, the IJ noted that it was possible that the armed men who Lopez Vasquez testified came looking for him were "government officials seeking to have him comply with the reporting requirements to the military." Accordingly, the IJ ruled that Lopez Vasquez's "unconvincing testimony and his fear of persecution on account of what seems to be speculation and assumption in many parts does not meet his burden of proof for purposes of withholding of removal."

On appeal to the BIA, Lopez Vasquez argued through a new attorney that his removal hearing was "profoundly flawed" because he had received inadequate assistance of counsel. Specifically, he asserted that his prior counsel had failed to make an appearance before the IJ, made no opening or closing statement at the hearing, and presented no evidence to corroborate his testimony. The BIA adopted and affirmed the IJ's decision, concluding that Lopez Vasquez did not meet his burden of proof for withholding of removal. And although the IJ acknowledged that his first attorney had been disbarred since the hearing, it determined that Lopez Vasquez failed to satisfy the requirements of *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988), which set forth the necessary elements of an ineffective assistance of counsel claim.

## II. Analysis

Lopez Vasquez's central argument is that the BIA erred by not recognizing that his prior counsel's inadequate performance before the IJ violated his rights to due process. Specifically, he argues that his first counsel's ineffective assistance prevented him from adequately supporting his claim for withholding of removal

with corroborating evidence. We need not determine whether Lopez Vasquez substantially complied with the *Lozada* requirements, or whether there is a due process remedy for the ineffective assistance of counsel in such circumstances generally. Lopez Vasquez was able to state his case before the IJ, and his claim of ineffective assistance of counsel is predicated on his inability to support the allegations he made with corroborating evidence. For purposes of this appeal, we accept as true the facts that he alleges. Thus, even without the corroborating evidence that a better attorney might have submitted to support his claim, Lopez Vasquez did not allege facts that, if proven, would support the withholding of removal.

To secure withholding of removal, an applicant must show that his "life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 208.16(a). Moreover, "an applicant must establish a 'clear probability' of persecution to avoid deportation." *Mabasa v. Gonzales*, 440 F.3d 902, 907 (7th Cir. 2006). We review denials of withholding of removal under a "highly deferential substantial evidence standard." *See Mabasa*, 440 F.3d at 907; *Uwase v. Ashcroft*, 349 F.3d 1039, 1041 (7th Cir. 2003). We will not reverse the agency's determination where the petitioner shows that the evidence supports a different outcome; a petitioner must show that the evidence *compels* a different conclusion. *See INS v. Elias-Zacarias,* 502 U.S. 478, 481 n.1 (1992); *Mabasa*, 440 F.3d at 907.

Lopez Vasquez testified that G-2 was hunting him because he witnessed their abduction of a relative. He asserts that his cousin was murdered for his political beliefs, and that he was then targeted because that political opinion was imputed to him. But this is mere speculation; if the kidnappers were, in fact, hunting Lopez Vasquez there is no reason to believe that it was because they objected to his political beliefs, as required by § 208.16(a). As the IJ additionally noted, because his cousin's attackers were masked, he never saw their faces and they never spoke to him or confronted him. He was never involved in providing food to the guerillas. Nor did Lopez Vasquez present a convincing argument that the agents would still be hunting him after more than fifteen years, given the intervening cessation of hostilities between the Guatemalan government and rebel faction. Referring to the State Department report, the IJ noted that the guerillas have since disbanded and now form part of the governing coalition. No facts that he alleged, even if supported by corroborating evidence, would show a clear probability of persecution if he is returned to Guatemala, much less compel that conclusion. *See Elias-Zacarias,* 502 U.S. at 481 n.1; *Mabasa*, 440 F.3d at 907.

In denying Lopez Vasquez's petition, we certainly do not in any way endorse his representation by legal counsel he deems incompetent to properly present his

case. But because his claims were fully considered and adjudicated, he was not prejudiced by any of the shortcomings he alleges.

DENIED.