In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 18-1511 & 18-3196

RAFAEL GIOVANNI HERRERA-GARCIA,

*Petitioner*,

*v.*

WILLIAM P. BARR,
Attorney General of the United States,

*Respondent*.

Petitions for Review of Decisions of
the Board of Immigration Appeals.
No. A074-211-058

ARGUED SEPTEMBER 25, 2018 — DECIDED MARCH 18, 2019

Before KANNE, ROVNER, and BARRETT, *Circuit Judges*.

BARRETT, *Circuit Judge*. Rafael Giovanni Herrera-Garcia seeks to avoid removal to El Salvador because he says that he will be tortured by gangs or corrupt government authorities if he is forced to return there. An immigration judge found that Herrera-Garcia had not shown that he, specifically, would be in danger and denied his request for relief. The judge also concluded that Herrera-Garcia had not established

that the government would have inflicted or allowed the alleged torture. The Board adopted and affirmed that decision.

Because the administrative decisions are supported by substantial evidence in the record, we deny Herrera-Garcia's petition for review of these decisions. We also reject his second petition for review on the denial of his motion for reconsideration because we agree with the Board that it was untimely.

I.

Herrera-Garcia is a native and citizen of El Salvador. He entered the United States illegally in 1990 and has remained here for the past twenty-seven years. In 2016, the Department of Homeland Security initiated removal proceedings against him under 8 U.S.C. § 1229a.[1] It alleged that he was removable as an alien because he was (1) convicted of a crime of moral turpitude and (2) present in the United States without being admitted or paroled. In his removal proceedings before the immigration judge (IJ), Herrera-Garcia denied both claims and argued that he qualified for asylum, withholding of removal, and relief under the Convention Against Torture (CAT).

Herrera-Garcia's argument for withholding centered on his time growing up in El Salvador. He testified that when he was nine years old, guerrillas stopped him and his friends to get information about people in his neighborhood who might be working for the military—because at that time, the

---

[1] Herrera-Garcia had previously been in removal proceedings that are not relevant to this appeal.

guerillas and the El Salvadoran government were fighting a civil war. Herrera-Garcia said that the guerrillas continued to stop by every three weeks or so to ask similar questions. He admitted, however, that he never saw any of the guerillas with guns. He also said that during one encounter, the guerrillas stopped him and a few friends and forced his friend, Franklin, to smoke marijuana. He claimed that although he escaped from the guerillas, they kidnapped Franklin.

Herrera-Garcia also testified that several of his friends were forced to join the military. He explained that he didn't want to be involved in the violence between the military and the guerillas. Ultimately, out of fear of both the military and the guerillas, he fled to the United States in 1990 and has remained here illegally since then.

Herrera-Garcia testified that his fear of living in El Salvador is worse today than it was twenty-seven years ago because of the growing number of gangs and kidnappings there. His parents also testified about the current state of gang violence in the country. They said that they worry about El Salvadoran gangs kidnapping him for ransom given his American accent—because the gangs believe that Americans are wealthy.

The IJ found Herrera-Garcia removable and denied his applications for asylum, withholding of removal, and relief under CAT. On his CAT claim, the IJ held that Herrera-Garcia had failed to show that it was more likely than not that he would be tortured if he returned to El Salvador. The IJ also found "entirely speculative" his claims that he would be tortured by gangs. Lastly, the IJ concluded that Herrera-Garcia had failed to provide sufficient evidence that the El

Salvadoran government would participate or acquiesce in the
alleged torture.

Herrera-Garcia appealed to the Board of Immigration
Appeals, which adopted and affirmed the IJ's decision.
Herrera-Garcia's petition for review makes only one
argument: he claims that he is entitled to relief under CAT.
Convention Against Torture and Other Cruel, Inhuman or
Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty
Doc. No. 100-20 (1990), 1465 U.N.T.S. 85.

While his petition was pending before us, he filed a
motion to reconsider with the Board, asserting that a new
Supreme Court decision, *Pereira v. Sessions*, 138 S. Ct. 2105
(2018), affected his case. *Pereira* held that a notice to appear
that fails to specify the time or place of a removal hearing does
not trigger the "stop-time rule" for purposes of cancellation
of removal. 138 S. Ct. at 2115. Herrera-Garcia argued that
*Pereira* should be extended outside the context of the stop-
time rule to preclude the agency's jurisdiction over his
proceedings. The Board denied his motion, concluding that it
was both untimely and, in any event, failed on the merits.
Because he also filed a petition for review from that order, we
consolidated the two petitions but concluded that oral
argument was unnecessary for the second. *See Khan v. Holder*,
766 F.3d 689, 695 (7th Cir. 2014); FED. R. APP. P. 34(a)(2)(C).

II.

When the Board adopts and supplements an IJ's decision,
we review the IJ's decision as well as any additional reasoning
provided by the Board. *Ndonyi v. Mukasey*, 541 F.3d 702, 709
(7th Cir. 2008). We consider the decisions "under the
deferential substantial evidence standard, meaning that we

may only reverse their factual findings if the facts *compel* an opposite conclusion." *Minghai Tian v. Holder*, 745 F.3d 822, 828 (7th Cir. 2014).

To qualify for relief under CAT, an alien must prove that he would more likely than not be tortured if removed. 8 C.F.R. § 1208.16(c)(2); *see Perez-Montes v. Sessions*, 880 F.3d 849, 850 (7th Cir. 2018). Torture is defined as the intentional infliction of "'severe pain or suffering' for the purpose of coercion, punishment, or discrimination." *Borovsky v. Holder*, 612 F.3d 917, 923 (7th Cir. 2010) (citing § 1208.18(a)(1)). We consider several factors in assessing possible future torture: "evidence of past torture; evidence that the applicant could relocate to a different part of [his] home country; evidence of 'gross, flagrant or mass violations of human rights within the country of removal'; and other relevant country conditions." *Tchemkou v. Gonzales*, 495 F.3d 785, 795 (7th Cir. 2007) (citing 8 C.F.R. § 208.16(c)(3)(i)–(iv)). To receive protection under CAT, an alien must also prove that he would be tortured by the government or with its acquiescence. *Jabateh v. Lynch*, 845 F.3d 332, 342 (7th Cir. 2017). We agree with both the Board and the IJ that Herrera-Garcia failed to meet this standard.

For one, as the IJ pointed out, Herrera-Garcia provided no evidence of past torture or persecution. *See* 8 C.F.R. § 1208.16(c)(3)(i). Though his interactions with guerillas when he was a child may have been stressful, they do not rise to the level of "severe pain or suffering."

More importantly, we agree with the IJ that Herrera-Garcia's allegation of future torture is too speculative. He argues that he fears both corrupt government authorities and the growing number of gangs in El Salvador. But this has nothing to do with his experience in El Salvador over twenty-

seven years ago. His argument instead focuses on a general fear of violence that any person moving to El Salvador might have. And as we have said before, "[e]vidence of generalized violence is not enough"; there must be "a substantial risk that the petitioner will be targeted *specifically*." *Bernard v. Sessions*, 881 F.3d 1042, 1047 (7th Cir. 2018) (emphasis added); *see Ramos-Braga v. Sessions*, 900 F.3d 871, 882 (7th Cir. 2018) (explaining that "fear of generalized violence is insufficient to establish that [the petitioner] in particular is more likely than not to be tortured"); *Rashiah v. Ashcroft*, 388 F.3d 1126, 1133 (7th Cir. 2004).

Herrera-Garcia does claim that gangs will target him because of his American accent. And although there is some evidence in the record showing that gangs have extorted Americans, we agree with the IJ that this allegation is again too speculative. There is insufficient evidence to show that it is likely that Herrera-Garcia *specifically* will be extorted or that any extortion would rise to the level of torture. *See* AR at 422, 441, 460, 501. And as the IJ also pointed out, no one in Herrera-Garcia's extended family has been harmed while living in El Salvador. Nor have his parents, who are American citizens, been harmed on any of their regular trips there.

Finally, Herrera-Garcia fails to tie his claims of future torture to government action. To receive relief under CAT, the government must inflict or acquiesce in the torture. 8 C.F.R § 1208.18(a)(1); *id.* § 1208.18(a)(8) ("Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity.") The IJ emphasized that the El Salvadoran government recently put in place "extraordinary

measures" to thwart the rising gang violence, including focusing "on moving gang members to maximum security prisons, putting up cell phone signal blockers around the prisons, and conducting coordinated law enforcement operations." Although not dispositive of a lack of government acquiescence, *see Rodriguez-Molinero v. Lynch*, 808 F.3d 1134, 1139 (7th Cir. 2015), these efforts contradict Herrera-Garcia's claim that the El Salvadoran government is generally complicit in the ongoing gang violence. And Herrera-Garcia hasn't provided any other evidence—besides broad allegations that "gangs operate with impunity throughout El Salvador"—that would indicate that it is likely that the government would acquiesce in Herrera-Garcia's torture. *Cf. id.* at 1138–39 (finding acquiescence when petitioner provided evidence that he had been previously tortured by Mexican police).

In short, Herrera-Garcia fails to prove that if he returned to El Salvador (1) he would be specifically targeted by gangs or the military or (2) that the government would acquiesce in any torture. There is thus substantial evidence to support the IJ's and Board's decisions, and so we deny Herrera-Garcia's petition.

### III.

Herrera-Garcia contends in his second petition that the Board erred in denying his motion for reconsideration. We review the Board's decision under the deferential abuse of discretion standard and "will uphold the BIA's decision unless it 'was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Khan*, 766 F.3d at 696

(citation omitted). We agree with the Board that Herrera-Garcia's motion was untimely because it was filed over four months after the due date. *See* 8 C.F.R. 1003.2(b)(2) (stating that motions to reconsider a Board decision must be filed within 30 days of that decision).

And Herrera-Garcia has not established that equitable tolling excused this failure. *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (explaining that to prove equitable tolling, one must show diligence and extraordinary circumstances). He has provided no evidence that he acted diligently in preserving his rights over the initial 30 days or the four-months after. *See El-Gazawy v. Holder*, 690 F.3d 852, 860 (7th Cir. 2012) ("In light of his failure to offer any support for his claim that he acted diligently to preserve his rights during that time, we cannot say that the BIA abused its discretion in finding that [the petitioner] failed to meet the standard for due diligence."). Nor has he shown that extraordinary circumstances prevented him from filing. He implies that he was prevented from filing as long as *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), remained pending. But Herrera-Garcia ignores the fact that he could have raised the issue under consideration in *Pereira* with the IJ or the Board earlier or at least requested a stay until the case was decided. *Cf. Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005) ("It is hardly extraordinary that subsequently, after petitioner's case was no longer pending, this Court arrived at a different interpretation.").

In sum, we do not think that the Board abused its discretion in concluding that Herrera-Garcia's motion was untimely and that no exception applied.

\* \* \*

We DENY both petitions for review.