In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 19-2289

CARLOS ALVAREZ-ESPINO,

*Petitioner*,

*v.*

WILLIAM P. BARR, Attorney General of the United States,

*Respondent*.

_____

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A200-557-981

_____

ARGUED JANUARY 7, 2020 — DECIDED MARCH 6, 2020

AMENDED MAY 20, 2020

_____

Before BRENNAN, SCUDDER, and ST. EVE, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Carlos Alvarez-Espino entered the United States illegally in 1996, settled in Chicago, but later ran into legal trouble and came to the attention of immigration enforcement. During his time here, Alvarez-Espino assisted law enforcement by helping to solve a 2002 gas station robbery in which he was held at gunpoint. Helping the police

made Alvarez-Espino potentially eligible for a U visa, which could allow him to stay in the United States. He hired immigration counsel, but his lawyer failed to realize that Alvarez-Espino had a chance at receiving a U visa and instead pursued another remedy without success. Alvarez-Espino changed lawyers, but it was too late to reverse course. After protracted proceedings, the Board of Immigration Appeals denied multiple requests for relief, leaving Alvarez-Espino at risk of removal.

In denying relief, the Board held Alvarez-Espino to an unduly demanding burden on his allegation of ineffective assistance of counsel. But the law is equally clear that Alvarez-Espino's ability to continue pursuing a U visa means that he cannot show prejudice from his attorney's performance. So we are left to deny his petition for review.

**I**

Carlos Alvarez-Espino was born in Mexico in 1970. He entered the United States in 1996 without permission. Since then he and his wife have had four children, and he supports his family by running an upholstery business. Alvarez-Espino's time in the United States has not been without incident. In 2002, two men robbed him at gunpoint at a gas station in Chicago. Five years later, he was arrested for drunk driving and, following a probation violation, ended up with a one-year prison term. Alvarez-Espino served about half of his sentence before being released on parole and taken into immigration custody. Removal proceedings then commenced. See 8 U.S.C. § 1182(a)(6)(A)(i) (authorizing the removal of persons present in the United States without being admitted or paroled).

Alvarez-Espino hired an attorney to assist him in navigating the complicated immigration system. His counsel decided to pursue one and only one legal strategy—cancellation of removal, a discretionary form of relief from deportation for immigrants who have been in the country for at least ten years and whose families would suffer severe hardship if they were removed. See 8 U.S.C. § 1229b(b)(1). But people who have served 180 days or more in prison are ineligible for cancellation, see *id.* §§ 1229b(b)(1)(B), 1101(f)(7), and Alvarez-Espino spent about that much time in prison for his probation violation.

Counsel's strategy had little chance of success but nevertheless led to a drawn-out legal battle. After several continuances and missed deadlines over more than three years, an immigration judge concluded that Alvarez-Espino served too much time in prison to be eligible for cancellation of removal. Even if that conclusion was mistaken, the IJ noted, Alvarez-Espino's barebones application for cancellation failed on the merits. In denying relief, the IJ expressed frustration that the case "had been continued for more than three years to develop the issues" and yet counsel had come forward with "very little information."

On appeal, the Board of Immigration Appeals agreed that Alvarez-Espino was ineligible for cancellation. From there, however, the Board remanded to the immigration court to consider whether Alvarez-Espino could receive voluntary departure. By leaving the United States voluntarily, Alvarez-Espino would be able to apply for permission to reenter in ten years, as opposed to facing a potential lifetime bar to reentry. See 8 U.S.C. § 1229c.

Alvarez-Espino grew frustrated and in time sought advice from a different lawyer. That new counsel asked Alvarez-Espino basic questions about his background and time in the United States. She immediately realized that he likely qualified for a U visa based on the assistance he provided to the police after being robbed at gunpoint. Congress made U visas available to immigrant victims of crime in the United States who suffered substantial physical or mental abuse and who assisted the authorities in investigating that crime. See 8 U.S.C. § 1101(a)(15)(U). U visa applicants must receive from a law enforcement official a certification that they have been (or are likely to become) helpful in investigating or prosecuting criminal activity. See *id.* § 1184(p)(1). Applicants also must show that they are admissible, or otherwise eligible to receive a visa. See *id.* § 1182(a). For someone like Alvarez-Espino who entered the United States illegally, a waiver of inadmissibility can excuse that violation for the purpose of seeking a visa. See *id.* § 1182(d)(14).

Knowing all of this, Alvarez-Espino's new counsel began assembling a U visa application and requested the necessary law enforcement certification. She also appeared before the immigration court and sought a continuance to complete the paperwork before submitting the application to the United States Citizenship and Immigration Services, a component of the Department of Homeland Security.

But all of this proved too late. The IJ denied the continuance, emphasizing that Alvarez-Espino had years to apply for a U visa but failed to do so until removal proceedings were far along. The IJ also rejected new counsel's explanation that the delay should be excused because of the ineffective assistance of Alvarez-Espino's prior counsel.

Alvarez-Espino appealed the denial of the motion for a continuance and moved for a remand to apply for a waiver of inadmissibility before the immigration court. He also sought to terminate his proceedings based on errors in the initial Notice to Appear before immigration authorities.

While his appeal was pending, Alvarez-Espino's new attorney filed his U visa application with USCIS. Alvarez-Espino also took the steps required by the Board to prove an ineffective assistance claim. See *Matter of Lozada*, 19 I. & N. 637 (B.I.A. 1988). He signed an affidavit about his previous representation and sent a letter to his first lawyer alleging ineffective assistance. He also sent a request for investigation to the state bar disciplinary authorities. Alvarez-Espino's first attorney responded to the allegations by stating that "Mr. Espino never advised me that he was a victim of a crime. I have prepared hundreds of U-visa applications over the past years, and I always ask my clients on the first interview date whether a client has been a victim of a crime."

The Board dismissed the appeal. Rejecting Alvarez-Espino's ineffective assistance allegations, the Board determined that "it was not evident that [he] informed his prior counsel of the robbery." The Board also underscored Alvarez-Espino's repeated delays in the immigration courts. Nor could Alvarez-Espino show any prejudice, the Board continued, because he remained able, even if ordered removed to Mexico, to pursue a U visa. The Board also denied Alvarez-Espino's motion to terminate proceedings because he suffered no harm from any error in his Notice to Appear.

Alvarez-Espino now petitions for our review.

## II

We review the denial of motions for a continuance and for a remand for abuse of discretion, reversing only if the decision "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." *Giri v. Lynch*, 793 F.3d 797, 800–01 (7th Cir. 2015); see also *Toure v. Barr*, 926 F.3d 403, 407 (7th Cir. 2019) (motion for continuance); *Cruz-Martinez v. Sessions*, 885 F.3d 460, 464 (7th Cir. 2018) (motion to remand).

## A

Alvarez-Espino argues that the immigration judge and the Board should have granted the continuance to allow USCIS time to process his U visa application. The Attorney General recently clarified that immigration judges may allow continuances only if the noncitizen demonstrates good cause. See *Matter of L-A-B-R-*, 27 I. & N. Dec. 405, 411 (A.G. 2018) (citing 8 C.F.R. § 1003.29). Alvarez-Espino sought to do so by asserting that his first attorney was ineffective. But the Board rejected his argument, emphasizing that the record failed to show that Alvarez-Espino informed his prior counsel of the robbery.

The Board's reasoning misses the mark. While noncitizens in removal proceedings do not have a right to counsel under the Sixth Amendment, the denial of effective assistance of counsel may under certain circumstances violate an immigrant's statutory right to retain counsel or the due process guarantee of the Fifth Amendment. Compare *Sanchez v. Keisler*, 505 F.3d 641, 647–48 (7th Cir. 2007) (locating the right to retain counsel in the Immigration and Nationality Act) with *Surganova v. Holder*, 612 F.3d 901, 907 (7th Cir. 2010)

(explaining that ineffective assistance may violate the Fifth Amendment). To prevail, the attorney's error must be "so unfair as to have precluded [the noncitizen] from reasonably presenting his case." *Sanchez v. Sessions*, 894 F.3d 858, 862 (7th Cir. 2018). Applying that standard, we have found ineffectiveness when an attorney admitted that his client's marriage was fraudulent and by doing so precluded all defenses to removal, *Habib v. Lynch*, 787 F.3d 826, 831 (7th Cir. 2015), and when an attorney could not provide any reason for failing to pursue a likely meritorious ground of relief, *Keisler*, 505 F.3d at 650. We also require the noncitizen to show prejudice. In this immigration context, that means that counsel's errors "actually had the potential for affecting the outcome of the proceedings." *Sanchez*, 894 F.3d at 863 (internal citations and quotations omitted).

The Board should not have faulted Alvarez-Espino for failing to provide his initial counsel with information significant to a potential U visa application. The Board's reasoning is backwards: it is up to counsel, not the client, to ask the right questions and to solicit information pertinent to potential legal grounds to prevent removal. To place the burden on Alvarez-Espino as the Board did is to require him to have a nuanced understanding of American immigration law. That expectation defies reality.

None of this is hypothetical. Alvarez-Espino explained in his affidavit that his initial counsel never asked him if he had been a crime victim. For his part, prior counsel seemed to disagree, stating that his general practice is to ask clients whether they have been victims of crime. Confusion abounds on the point, and it suffices here to reinforce our primary message in *Sanchez v. Keisler*: counsel needs to "exercise professional

judgment" in evaluating and pursuing potential avenues for relief in representing noncitizens like Alvarez-Espino who find themselves entangled in complex immigration proceedings and at risk of being removed from the United States. See 505 F.3d at 648.

In the end, Alvarez-Espino's larger obstacle is that he cannot make the required showing of prejudice. Unlike a situation where an attorney's decisions have irreparably undermined a noncitizen's prospects for relief, *e.g.*, *Habib*, 787 F.3d at 831, here Alvarez-Espino can and did file his application for a U visa. USCIS will process the application whether or not Alvarez-Espino has a final order of removal against him. The Board did not address the question whether there would be prejudice in the context of actual removal, and neither do we.

Because Alvarez-Espino remains able to continue pursuing U visa, his only potential theory of prejudice is that his first counsel's deficient performance delayed the filing of his application. Perhaps so. But we have never found mere delay prejudicial, nor do we see support for such a view in other circuits. While sympathetic to what Alvarez-Espino experienced with his first counsel, we cannot conclude that the Board abused its discretion in denying the motion for a continuance.

So too must we reject Alvarez-Espino's contention that the Board should have granted his motion to remand the case to an immigration judge so that he could seek a waiver of inadmissibility. Though Alvarez-Espino could seek a waiver from an immigration judge, he need not do so. Under our case law, immigration judges and USCIS share concurrent jurisdiction over U visa waivers, though only USCIS may grant U visas themselves. See *Baez-Sanchez v. Sessions*, 872 F.3d 854, 855–56

(7th Cir. 2017). Acknowledging the existence of both path-
ways, Alvarez-Espino also sought a waiver from USCIS,
which should be adjudicated with his U visa application. Be-
cause Alvarez-Espino can continue to pursue every immigra-
tion benefit he seeks, the Board did not abuse its discretion in
denying his motion for remand or for a continuance.

B

We close with a brief response to Alvarez-Espino's conten-
tion that removal proceedings should end because the Notice
to Appear he received from the immigration court failed to
include a date and time for his initial hearing. Alvarez-Espino
grounds his argument in the Supreme Court's recent decision
in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018).

In *Ortiz-Santiago v. Barr*, we discussed *Pereira* and ex-
plained that the agency's rule that a Notice to Appear must
contain a date and time is not jurisdictional, but instead re-
flects a claims-processing rule. 924 F.3d 956, 962–63 (7th Cir.
2019). The upshot of that conclusion for Alvarez-Espino is that
he must prove prejudice from the Notice to Appear lacking
date and time information. He has not done so. The record
shows that immigration authorities sent Alvarez-Espino a
supplemental letter informing him of the date and time of his
initial hearing. He then attended the proceeding, eliminating
any claim of prejudice. See *Vyloha v. Barr*, 929 F.3d 812, 817
(7th Cir. 2019) (reaching the same conclusion).

For these reasons, we DENY the petition for review.