In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-1438

VICTOR MERAZ-SAUCEDO,

*Petitioner,*

*v.*

JEFFREY A. ROSEN,
Acting Attorney General of the United States,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A205-154-483.

ARGUED NOVEMBER 6, 2020 — DECIDED JANUARY 15, 2021

Before ROVNER, BRENNAN, and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Victor Meraz-Saucedo seeks asylum, withholding of removal, and protection under the Immigration and Nationality Act and the Convention Against Torture ("CAT"). He petitions for review of the order of the Board of Immigration Appeals ("Board") and requests we remand his case for additional proceedings before the Immigration Court. We deny his petition. We find the Board did not abuse its

discretion in denying Meraz-Saucedo's motion to remand to apply for cancellation of removal. We also find the Board's decision affirming the denial of Meraz-Saucedo's asylum, withholding of removal, and protection under the CAT claims was supported by substantial evidence.

## I. Background

Meraz-Saucedo is a native and citizen of Mexico. He is married to a Mexican native and citizen with whom he has two young U.S.-citizen children. Meraz-Saucedo first attempted to enter the United States around October 2003. After encountering immigration officials at the border, he was returned to Mexico. He entered the United States without inspection in 2004 and has not departed.

On October 25, 2013, the Department of Homeland Security issued and served a Notice to Appear ("NTA") on Meraz-Saucedo for removal proceedings. *See* 8 U.S.C. § 1229(a). The NTA did not contain a specific date or time for the initial hearing. The NTA only instructed Meraz-Saucedo to appear before an Immigration Judge ("IJ") in Chicago at a date and time "to be set." On December 4, 2013, the Chicago Immigration Court served Meraz-Saucedo a Notice of Hearing ("NOH"), informing him that his hearing would take place on July 23, 2014 at 9:00 a.m. Meraz-Saucedo appeared before the IJ with counsel on July 23, 2014. He did not object to the lack of a specified time and date in his NTA.

During the proceedings before the IJ on July 23, 2014, Meraz-Saucedo admitted the factual allegations, conceded the charge of removability under 8 U.S.C. § 1182(a)(6)(A)(i), and declined to designate a country for removal. The IJ designated Mexico at the Department of Homeland Security's request.

The IJ found Meraz-Saucedo to be removable as charged for being present in the United States without having been admitted or paroled. Meraz-Saucedo informed the IJ that he sought asylum, withholding of removal, and protection under the CAT, based on his purported fear of persecution and torture if removed to Mexico. *See* 8 U.S.C. §§ 1101(a), 1231(b)(3); 8 C.F.R. §§ 1208.16–18.

The IJ denied his request for asylum and withholding of removal. At his hearing, Meraz-Saucedo testified and based his asylum claim on the physical abuse and threats that his family had received from the Sinaloa Cartel in El Palmito, Durango, Mexico because of his father's refusal to grow marijuana for the cartel in 2003. Following this refusal, Meraz-Saucedo's father sent him to the United States for his safety. His father and siblings subsequently relocated to Durango City, approximately six hours from their farm and the cartel.

Meraz-Saucedo testified that in 2013, other cartel members beat his father badly and kidnapped Meraz-Saucedo's brother and niece. After Meraz-Saucedo's father paid for their release, the cartel members warned him that they would kill them all if they said anything about the incident. The cartel members also told his father that they were going to use the family's land and house, that they knew Meraz-Saucedo was in the United States, and that they would make them disappear as soon as Meraz-Saucedo returned to Mexico. Meraz-Saucedo's immediate family has not had any encounters with cartel members since this incident.

The IJ found Meraz-Saucedo credible, but concluded he had "not established a pattern or practice of persecution against his family members by the cartel." Moreover, even if such a pattern or practice existed, the IJ concluded Meraz-

Saucedo could not establish a nexus between the persecution and the targeting of his family as a social group because the targeting was the result of financial and not familial reasons.

The IJ also found Meraz-Saucedo failed to show a substantial risk or likelihood that he would be singled out for torture in Mexico or that a government official would acquiesce to any harm inflicted upon him by the cartel. Although Meraz-Saucedo submitted general reports regarding country conditions in Mexico describing gang violence and other safety issues, the record did not show a particularized threat of torture. Meraz-Saucedo conceded that he had never been tortured in Mexico. Further, he admitted that nothing else had happened to his immediate family after the 2013 incident even though his parents live in the same house where they lived during that incident and his brother and niece who were kidnapped still live in Mexico. And although several of his cousins were killed in 2017, the IJ found no link between their deaths and the cartel attack and extortion of Meraz-Saucedo's family.

Meraz-Saucedo appealed to the Board. While his appeal was pending, he filed a motion to remand to apply for cancellation of removal under 8 U.S.C. § 1229b(b). Meraz-Saucedo claimed the Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), made him newly eligible for cancellation of removal.

In February 2020, the Board adopted and affirmed the IJ's decision. The Board found no clear error in the IJ's findings of fact. It also denied Meraz-Saucedo's motion to remand, finding the argument "foreclosed" by *Matter of Mendoza-Hernandez*, 27 I&N Dec. 520 (BIA 2019), and distinguishable from *Ortiz-Santiago v. Barr*, 924 F.3d 956 (7th Cir. 2019).

## II. Discussion

In his petition, Meraz-Saucedo challenges the Board's denial of his motion to remand on several grounds. He again claims the Supreme Court's decision in *Pereira* makes him eligible for cancellation of removal because the NTA was defective for purposes of stopping time under § 1229b(d)(1). He further contends that the Board erred when it denied his motion to remand based on *Matter of Mendoza-Hernandez* and wrongly applied *Ortiz-Santiago*. Finally, Meraz-Saucedo argues the Board erred when it affirmed the IJ's denial of his asylum, withholding of removal, and protection under the CAT claims.

### A. Motion to Remand

We first address whether the Board erred in denying Meraz-Saucedo's motion to remand to apply for cancellation of removal. We review the Board's decision for abuse of discretion and will reverse only if the Board's decision "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." *Alvarez-Espino v. Barr*, 959 F.3d 813, 817 (7th Cir. 2020) (quoting *Giri v. Lynch*, 793 F.3d 797, 800–01 (7th Cir. 2015)).

For Meraz-Saucedo to be eligible for cancellation of removal under 8 U.S.C. § 1229b(b)(1), he must have been "physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application[.]" 8 U.S.C. § 1229b(b)(1)(A). Any period of continuous presence, however, is deemed to end when the person is "served a notice to appear under section 1229(a)." *Id.* § 1229b(d)(1). This is called the "stop-time rule." *See Pereira*, 138 S. Ct. at 2109.

In *Pereira*, the Supreme Court held that when a NTA fails to designate the specific time or place of a noncitizen's removal proceedings, it is putative and not a "notice to appear under section 1229(a)" of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. *Id.* at 2115–16. Therefore, a defective NTA does not trigger the stop-time rule ending the noncitizen's period of continuous physical presence for purposes of cancellation of removal. *Id.* Following *Pereira*, the Board reconsidered § 1229(a)'s requirements in *Matter of Mendoza-Hernandez*, which addressed § 1229(a)'s requirements in the context of the stop-time rule. 27 I&N Dec. at 529. A slight majority of the Board interpreted § 1229(a) to allow the government to serve multiple notices that, pieced together, provide all of the information required by § 1229(a)'s definition of "a 'notice to appear.'" *Id*. at 531. The Board concluded that although the statute's reference to "a" NTA "is in the singular," the statute nevertheless does not require that the notice come "in a single document." *Id*. Instead, "it may be provided in one or more documents—in a single or multiple mailings," *id.,* such as through a "Notice to Appear" and a subsequent "Notice of Hearing." *Id*. at 529.

The Board denied Meraz-Saucedo's motion to remand based on *Matter of Mendoza-Hernandez*, holding Meraz-Saucedo's subsequent receipt of a NOH perfected the deficient NTA and triggered the stop-time rule. The Board also found our decision in *Ortiz-Santiago* to be consistent with its decision. In *Ortiz-Santiago*, we held that § 1229(a)'s notice requirement was a claim-processing rule subject to waiver and forfeiture. 924 F.3d at 963. Relief based on a defective NTA is available only "for those who make timely objections, as well as those whose timing is excusable and who can show prejudice." *Id.* at 965. Because Meraz-Saucedo failed to raise the

issue of his eligibility for cancellation of removal before the IJ, the Board concluded that he forfeited his remand claim.

Meraz-Saucedo contends the Board erred in denying his motion to remand for two reasons. He first argues that it wrongly decided *Matter of Mendoza-Hernandez*, so we should not follow it. He also asserts his case is distinguishable from *Ortiz-Santiago* because the stop-time rule is not a procedural claim-processing rule but one that involves substantive eligibility for immigration relief. We address each of these arguments.

There is no dispute that the NTA Meraz-Saucedo received on October 25, 2013 did not contain the requisite time and place information. Meraz-Saucedo did, however, subsequently receive information concerning the time and place of his hearing through a NOH on December 4, 2013. Meraz-Saucedo correctly notes that the Third and Tenth Circuits have not followed *Matter of Mendoza-Hernandez*, and hold instead that § 1229(a) does not permit this type of multi-step process. *Guadalupe v. Attorney Gen. of the U.S.*, 951 F.3d 161, 167 (3d Cir. 2020); *Banuelos-Galviz v. Barr*, No. 19-9517, 2020 WL 1443523, at *1 (10th Cir. Mar. 25, 2020). The Ninth Circuit initially rejected the Board's position, *Lopez v. Barr*, 925 F.3d 396, 405 (9th Cir. 2019), but it has now vacated that decision and set the matter for rehearing en banc. 948 F.3d 989 (9th Cir. 2020). The Fifth and Sixth Circuits, on the other hand, have rejected Meraz-Saucedo's arguments and agree with *Mendoza-Hernandez. Yanez-Pena v. Barr*, 952 F.3d 239, 241 (5th Cir. 2020); *Garcia-Romo v. Barr*, 940 F.3d 192, 197 (6th Cir. 2019).

As in our recent decision in *Chen v. Barr*, 960 F.3d 448 (7th Cir. 2020), we need not decide here whether we agree with

*Matter of Mendoza-Hernandez*.[1] *Chen* is directly applicable to Meraz-Saucedo's arguments. In *Chen*, we held that a noncitizen who delayed making a timely argument about the adequacy of her NTA until after *Pereira* was decided forfeited the argument. 960 F. 3d at 451. Like Chen, Meraz-Saucedo did not object to the defective NTA or seek relief on this basis until after the Supreme Court's ruling and after his hearing before the IJ.

Timely objections provide the government the opportunity to cure any error. As such, "[r]elief will be available for those who make timely objections, as well as those whose timing is excusable and who can show prejudice." *See Ortiz-Santiago*, 924 F. 3d at 965. Because Meraz-Saucedo did not timely object to the defective NTA, he has forfeited his argument and can only obtain relief if he can establish excusable delay and prejudice. *See Chen*, 960 F.3d at 451 ("[W]e ask (as *Ortiz-Santiago* itself did) whether Chen made a timely objection or can show excusable delay and prejudice.").

Meraz-Saucedo argues his objection was timely because he presented his *Pereira* argument during the pendency of his appeal before the Board unlike Chen who raised it in an untimely motion to reopen. As the government correctly points out, however, the relevant inquiry is whether Meraz-Saucedo raised his objection during the proceedings before the IJ after

---

[1] Although the Supreme Court has granted certiorari in *Niz-Chavez v. Barr*, 207 L. Ed. 2d 169 (June 8, 2020), to decide this issue, there is no need to hold Meraz-Saucedo's case in abeyance until the Supreme Court's decision. Even if we were to depart from *Matter of Mendoza-Hernandez*, that would not help Meraz-Saucedo because he has forfeited his claim, as explained below.

receiving the defective NTA. *See Ortiz-Santiago*, 924 F.3d at 964–65; *Chen*, 960 F.3d at 451. He did not.

Alternatively, Meraz-Saucedo contends his delay is excusable because the Supreme Court decided *Pereira* after he appeared before the IJ. We have squarely rejected this argument. In *United States v. Manriquez-Alvarado*, 953 F.3d 511 (7th Cir. 2020), we held that while *Pereira* was not decided until 2018, Manriquez-Alvarado could have relied on the underlying statute, § 1229(a), long before *Pereira*. *Id.* at 513 (finding petitioner was free to invoke the statute before 2008). Because *Pereira* is a statutory decision, Manriquez-Alvarado could have "consulted the statute and invoked its benefit, small as that was." *Id.* at 514. Similarly, in *Salazar-Marroquin v. Barr*, 969 F.3d 814 (7th Cir. 2020), we held the petitioner could have raised the issue of his defective NTA earlier, relying on the "clear statutory text" and the Third Circuit's disagreement with the Board on "the effect of a noncompliant Notice to Appear." *Id.* at 817; *see also Vyloha v. Barr*, 929 F.3d 812, 817 (7th Cir. 2019) (holding while "Vyloha took issue with his defective Notice only after the Supreme Court decided *Pereira* … the clear and unequivocal statutory text of § 1229(a)(1)(G)(i) supported a meritorious argument that Vyloha could have raised before *Pereira*").

Meraz-Saucedo further claims that he suffered prejudice because the Board's denial of his motion "affected the outcome of his case by depriving him of the opportunity to apply for cancellation of removal." As we recently held in *Hernandez-Alvarez v. Barr*, 982 F.3d 1088 (7th Cir. 2020), however, "*Ortiz-Santiago*'s prejudice inquiry does not focus on prejudice derived from the removal proceedings generally; rather, it focuses specifically on prejudice suffered at the time of the

hearing." *Id.* at 1096. Otherwise, any petitioner could avoid forfeiture by arguing that he was prejudiced by the loss of a substantive argument.

In assessing prejudice, "we look, for example, to whether the defects in the notice to appear deprived the alien of the ability to attend or prepare for the hearing, including the ability to secure counsel." *Id.*; *see Chen*, 960 F.3d at 451 (determining that respondent could not show prejudice because she did not "contend that she lacked actual knowledge of the time and place for the hearing" and she appeared with counsel). Indeed, we have held that where petitioners receive later hearing notices that contain the time and place of their scheduled and rescheduled hearings, as occurred here, there is no prejudice. *See Salazar-Marroquin*, 969 F.3d at 817; *Ortiz-Santiago*, 924 F.3d at 964–65; *Vyloha*, 929 F.3d at 817. And where a petitioner actually attends the proceeding, any claim of prejudice is eliminated. *Alvarez-Espino*, 959 F.3d at 819; *see Chen*, 960 F.3d at 451. Meraz-Saucedo appeared in Immigration Court as ordered by his NTA with counsel and never argued that he suffered prejudice from the lack of time and place information in his NTA. As such, he has forfeited this argument.

Finally, Meraz-Saucedo attempts to distinguish his case from *Ortiz-Santiago* and *Chen* by arguing that the stop-time rule is not a claim-processing rule and thus forfeiture does not apply as it did in *Ortiz-Santiago* and *Chen*. This argument is simply an attempt to dodge the claims-processing rule articulated in *Ortiz-Santiago* and rehash his prejudice arguments. For the reasons described above, it fails.

**B. Asylum, Withholding of Removal, and Protection under the Convention Against Torture**

We next turn to the merits of Meraz-Saucedo's petition. Meraz-Saucedo contends the Board erred in denying his asylum, withholding of removal, and protection under the CAT claims. The Board reasoned that although Meraz-Saucedo may fear the Sinaloa Cartel in Mexico, he "has not established eligibility for asylum or withholding of removal, because he has not demonstrated a nexus between the claimed persecution and a protected ground." The Board also found that Meraz-Saucedo has not established eligibility for protection under the CAT because "there is a lack of evidence or testimony to establish that any such harm would be inflicted with the requisite degree of state action."

We review questions of law de novo and findings of fact for "substantial evidence." *See Cece v. Holder*, 733 F.3d 662, 675–76 (7th Cir. 2013) (en banc). Whether a petitioner suffered past persecution or harbors a well-founded fear of future persecution are factual findings subject to the deferential "substantial evidence" standard, requiring reversal only if the evidence compels a different result. *See N.Y.C.C. v. Barr*, 930 F.3d 884, 888 (7th Cir. 2019). Under the substantial evidence standard, the agency's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citations omitted). Where the Board "adopted the findings of the IJ and added its own analysis, we review the IJ's decision as supplemented" by the Board. *Giri*, 793 F.3d at 800.

**1. Asylum**

Meraz-Saucedo contends that the Board erred by affirming the IJ's decision that he failed to demonstrate that he has a well-founded fear of future persecution on account of his membership in his family. He points to testimony that his father's assault and the kidnapping, beating, and detention of his brother by the Sinaloa cartel in September 2013 were directly related to his father's refusal to grow marijuana for the cartel in 2003. He relies on his father's statement that cartel members warned him that he and his family members would be killed if they said anything about the incident, that they knew Meraz-Saucedo was in the United States, and that they would make them disappear as soon as Meraz-Saucedo returned to Mexico.

To qualify for asylum, a petitioner must prove that he is "unable or unwilling" to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A). A well-founded fear of future persecution is one that is "subjectively genuine and objectively reasonable in light of credible evidence." *Hernandez-Garcia*, 930 F.3d at 920 (citation omitted). An asylum applicant must show a nexus between his fear of future persecution and one of the five protected grounds: race, religion, nationality, membership in a particular social group, or political opinion. *Torres v. Mukasey*, 551 F.3d 616, 629 (7th Cir. 2008); *see also* 8 U.S.C. § 1101(a)(42)(A). We have recognized that membership in a nuclear family can satisfy the social group requirement. *Gonzalez Ruano v. Barr*, 922 F.3d 346, 353 (7th Cir. 2019) (collecting cases). Yet a causal link between family membership and the

persecution does not arise "simply because a particular social group of family members exists and the family members experience harm." *Id.* at 354 (internal quotation marks and citations omitted). The evidence must show that "family membership was the motivation for the persecution." *Ferreyra v. Barr*, 962 F.3d 331, 338 (7th Cir. 2020).

Substantial evidence supports the Board's determination that Meraz-Saucedo failed to establish the requisite nexus between his fear of persecution upon return to Mexico and his family membership. Although Meraz-Saucedo testified about the 2003 incident at his father's farm and the 2013 kidnapping and extortion incident against his family, he failed to prove that these attacks were linked or that they were motivated by his family status rather than the cartel's financial incentive. The 2013 kidnapping took place ten years after, and hundreds of miles from, the 2003 incident. There is no evidence that the cartel members involved in the kidnapping knew about the 2003 incident or had any connection to it. Furthermore, since the 2013 episode, the cartel has not threatened Meraz-Saucedo's family. That fact is not dispositive, but it supports the conclusion that the cartel is not persecuting the family. *See Plaza-Ramirez v. Sessions*, 908 F.3d 282, 286 (7th Cir. 2018); *Orellana-Arias v. Sessions*, 865 F.3d 476, 488 (7th Cir. 2017) (holding no future persecution where El Salvador gang did not deliver on any threats against petitioner's family or engage in extortion after he left four years earlier).

Meraz-Saucedo also failed to demonstrate that his cousins' disappearances and killings directly resulted from either the cartel or the cartel targeting his family rather than generalized crime. *See Plaza-Ramirez*, 908 F.3d at 286 (holding in the absence of more evidence that the IJ correctly "found that the

2010 kidnapping of Plaza-Ramirez's girlfriend's sister related only to the general violence in Mexico"). Beyond Meraz-Saucedo's speculation, there is no evidence that the cartel even killed his cousins. The IJ held that the only evidence available suggests that the cousins were killed because of their ongoing conflict with another family, and Meraz-Saucedo has not rebutted that evidence. Even if the cartel killed his cousins, moreover, Meraz-Saucedo has not identified any evidence that the cartel knows that Meraz-Saucedo or anyone in his immediate family is related to his cousins.

Meraz-Saucedo also claims the Mexican government is unable to control persecution and torture against its citizens by the cartels. Yet the record contains no evidence that he ever sought assistance from the Mexican government to protect him from abuse. An applicant who claims persecution by a private actor must demonstrate that the government either condoned the persecution or was helpless to prevent it. *See N.Y.C.C.*, 930 F.3d at 888–89. We have held that petitioners do not meet this standard when they do not provide evidence that they sought assistance from the authorities. *See Ferreyra*, 962 F.3d at 338.

### 2. Withholding of Removal and CAT

Since an asylum claim has a lower burden of proof, failure to establish eligibility for asylum means it is unlikely that Meraz-Saucedo can prevail on his withholding of removal and CAT claims. *See Toure v. Holder*, 624 F.3d 422, 428 (7th Cir. 2010) (explaining that a failure to prove persecution for purposes of asylum eligibility necessarily means a petitioner cannot meet the higher standard for withholding of removal); *see also Bathula v. Holder*, 723 F.3d 889, 903 (7th Cir. 2013)

(explaining that the CAT's requirement to show a future likelihood of torture is a more stringent standard than persecution).

To receive protection under the CAT, an applicant must show that there is "a 'substantial risk' that [he] would be tortured if forced to return to Mexico." *Garcia-Arce v. Barr*, 946 F.3d 371, 377 (7th Cir. 2019) (citation omitted). "Torture" is defined as "severe pain or suffering" or an "extreme form of cruel and inhuman treatment" that is intentionally inflicted with the consent or acquiescence of a public official. 8 C.F.R. § 208.18(a)(1)–(2).

Meraz-Saucedo has not identified evidence compelling the conclusion that there is a substantial risk that he will be tortured if returned to Mexico. To support his allegation of future torture, Meraz-Saucedo cites the same evidence he provided for his asylum claim. His allegation of future torture fails on similar grounds. Meraz-Saucedo has never been tortured in Mexico. He has not described any threats or harm directed at him since his father's 2013 extortion. He has also not shown a link between the deaths of his cousins and the cartel attack and the extortion of his family. In sum, Meraz-Saucedo provides no basis to disturb the Board's conclusion that he failed to establish he would face a substantial risk of torture if returned to Mexico. *See, e.g.*, *W.G.A. v. Sessions*, 900 F.3d 957, 968 (7th Cir. 2018) (finding error where the Board did not consider that masked gang members raided the house of a close family friend at night and "murdered and dismembered him for disobeying their orders"); *see also Rashiah v. Ashcroft*, 388 F.3d 1126, 1133 (7th Cir. 2004) (collecting examples of conduct not extreme enough to be "torture").

Meraz-Saucedo also failed to present sufficient evidence that he would be tortured at the hands of, or with the acquiescence of, a government official. "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." *Lopez v. Lynch*, 810 F.3d 484, 493 (7th Cir. 2016) (citing 8 C.F.R. § 1208.18(a)(7)). Meraz-Saucedo only demonstrates that the State of Durango was generally under serious threat of drug violence and that cartels had obtained information from government officials in carrying out this violence. This general fear of growing corruption and gang activity is insufficient to prove acquiescence. *See Herrera-Garcia v. Barr*, 918 F.3d 558, 562 (7th Cir. 2019). Meraz-Saucedo has not shown that any public official knowingly turned a blind eye to his claims.

### III. Conclusion

For the foregoing reasons, we deny Meraz-Saucedo's petition for review.