In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 21-2085

ROBERTO CABRERA-RUIZ,

*Petitioner*,

*v.*

MERRICK B. GARLAND,
Attorney General of the United States,

*Respondent*.

———————————

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A028-801-596

———————————

ARGUED JANUARY 7, 2022 — DECIDED JUNE 14, 2022

———————————

Before EASTERBROOK, ST. EVE, and KIRSCH, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Roberto Cabrera-Ruiz, a Mexican national, has a long history of entries into the United States, deportations after convictions for crimes of varying severity, and subsequent reentries beginning the cycle anew. In 2018, Drug Enforcement Administration ("DEA") agents arrested Cabrera-Ruiz for a suspected drug trafficking offense.

Cabrera-Ruiz pleaded guilty to illegal reentry instead and received a time-served sentence. He now faces deportation.

Cabrera-Ruiz applied for deferral of removal pursuant to the Convention Against Torture. The immigration judge ("IJ") denied Cabrera-Ruiz relief, relying heavily on an adverse credibility determination. The Board of Immigration Appeals ("BIA") dismissed Cabrera-Ruiz's appeal. Because substantial evidence supports the IJ's and the BIA's decisions, we deny Cabrera-Ruiz's petition for review.

## I. Background

Cabrera-Ruiz most recently reentered the United States in 2015 after spending seven years in Mexico following a 2008 deportation. On December 3, 2018, DEA agents arrested Cabrera-Ruiz in Chicago, Illinois, with eight kilograms of cocaine. Over the next two years, Cabrera-Ruiz made four inconsistent statements regarding the drugs, his experiences with Mexican cartels, and fear of return.

Cabrera-Ruiz spoke with DEA agents shortly after his arrest. He told the DEA agents he received the drugs through a man named "Claudio" from Michoacán, Mexico. Cabrera-Ruiz claimed he met Claudio in Mexico three or four months prior. There, Claudio asked Cabrera-Ruiz to traffic cocaine. The two used a nameless middleman.

The next day, Cabrera-Ruiz interviewed with an Immigration and Customs Enforcement ("ICE") agent. He told the ICE agent he got the cocaine from someone he used to work with in Ohio. Cabrera-Ruiz believed the man was linked to the La Familia Michoacana drug cartel but did not know which cartel was running the current operation. Cabrera-Ruiz also explained his prior experience with organized crime. At a young

age while living in California, Cabrera-Ruiz joined the Sureños 13 gang and received gang tattoos. After his 2008 deportation to Mexico, Cabrera-Ruiz worked as a driver for La Familia Michoacana. Starting in 2009, he drove for a different cartel, the Cártel de Jalisco Nueva Generación ("CJNG"). Cabrera-Ruiz claimed he drove contraband in semi-trucks but never knew what he was hauling. The ICE agent then asked Cabrera-Ruiz if he feared persecution or torture if removed from the United States:

> Do you have any fear of persecution or torture should you be removed from the United States? Maybe you think because of like political reasons, or maybe religious reasons you're going to be persecuted or tortured. If you do have such a fear, then you would go through what's called the asylum process. While you're in custody here, you would see an Asylum Officer and you can explain why you fear persecution or torture based on, you know, like a group of certain categories. Like I said, some of them are religious reasons, political reasons. Things, there's you know, a number of reasons you can claim that you fear persecution. That's what the process is for. If you do have such a fear, then you would see an Asylum Officer here and you can explain your case to them and, and make the determination regarding that persecution or torture.

Cabrera-Ruiz answered with one word: "No."

Over a year later, on March 18, 2020, Cabrera-Ruiz interviewed with an asylum officer and shared his fear of return for the first time. He told the asylum officer that he began working as a driver for the CJNG in 2010. Cabrera-Ruiz claimed that in 2011 the CJNG blamed him for losing a

container that held 30 million pesos worth of computers. To avoid potential repercussions for this loss, Cabrera-Ruiz went into hiding. Then, the CJNG targeted Cabrera-Ruiz's family, shot his uncle, killed his nephew, and threatened to kill his brother. In May 2014, Cabrera-Ruiz turned himself in to the CJNG. The cartel tortured Cabrera-Ruiz for twenty-seven days. Cabrera-Ruiz's captors then released him with instructions to murder someone in Mexico City, Mexico. Instead, Cabrera-Ruiz fled to the United States. Cabrera-Ruiz's brother told him the CJNG is still looking for Cabrera-Ruiz and will kill him if he returns to Mexico.

At a July 9, 2020, immigration hearing, Cabrera-Ruiz told his story to the IJ. Regarding the DEA cocaine arrest, Cabrera-Ruiz testified that in 2018, a man approached him with a cell phone—Claudio of the CJNG was on the line. Cabrera-Ruiz previously met Claudio in Guadalajara, Mexico, between 2013 and 2015. Now, Claudio threatened to kill Cabrera-Ruiz's family if Cabrera-Ruiz refused to transport drugs. Regarding his history with organized crime and torture, Cabrera-Ruiz told a substantively similar story to the one he told the asylum officer months earlier. He admitted on cross-examination that he never shared this information during his 2018 ICE interview.

Arrested for drugs but sentenced only for an immigration offense, Cabrera-Ruiz now fears the CJNG will think he is a "snitch." Cabrera-Ruiz believes if he returns to Mexico, the CJNG will kill him, and the Mexican police will not protect him. He offered additional evidence, including an affidavit and testimony from his partner, Miriam Robles, a notarized statement from his cousin, Maria Del Carmen Banuelos Ruiz, his nephew's death certificate, and an expert report from Dr.

Nathan Jones. Relying on Cabrera-Ruiz's affidavit, supporting documentation, and general knowledge of Mexican cartel activity, Dr. Jones concluded that Cabrera-Ruiz was at risk of torture or death because he double-crossed the CJNG, appears to have dodged a serious sentence by cooperating with United States law enforcement, and has gang tattoos that would draw unwanted cartel and police attention throughout Mexico. In Dr. Jones's opinion, the Mexican authorities acquiesce to the cartels and would not protect Cabrera-Ruiz.

At a follow-up hearing on August 24, 2020, the IJ expressly doubted Cabrera-Ruiz's credibility. The IJ questioned Cabrera-Ruiz about various inconsistencies, including answering the ICE agent's fear question with a definitive "no," failing to tell the DEA agents that he only trafficked cocaine because Claudio threatened his family, and failing to mention in either interview his history of torture in CJNG captivity. Cabrera-Ruiz gave various versions of the same answer—he never said anything because the agents never asked. The IJ did not buy it, determining that the inconsistencies and omissions could not be reconciled.

In a detailed opinion, the IJ explained that although credible claims of past torture would ordinarily earn CAT relief, Cabrera-Ruiz was not credible and the IJ needed to consider the remaining record. The IJ concluded the evidence was insufficient to establish that Cabrera-Ruiz feared torture for double-crossing the CJNG, the risk of future harm for being a snitch was too speculative, and the gang tattoos were a nonfactor because Cabrera-Ruiz had previously lived in Mexico with those very same tattoos.

The IJ denied Cabrera-Ruiz's application. The BIA dismissed Cabrera-Ruiz's appeal, affirming the IJ's adverse

credibility determination and denial of CAT relief. Cabrera-Ruiz timely petitioned this Court for review.

## II. Analysis

When the BIA adopts the IJ's decision and provides additional reasoning, we consider both opinions. *Meraz-Saucedo v. Rosen*, 986 F.3d 676, 684 (7th Cir. 2021). We apply the substantial evidence standard to review the denial of CAT relief. *Mabuneza v. Garland*, 16 F.4th 1222, 1226 (7th Cir. 2021). The substantial evidence standard "requires us to affirm if the IJ's order is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (quoting *Rashiah v. Ashcroft*, 388 F.3d 1126, 1131 (7th Cir. 2004)) (cleaned up). We may only reverse findings of fact, including an adverse credibility determination, "if the evidence compels a different result," *Meraz-Saucedo*, 986 F.3d at 684 (citing *N.Y.C.C. v. Barr*, 930 F.3d 884, 888 (7th Cir. 2019)), such that "any reasonable adjudicator would be compelled to conclude the contrary," *id.* (quoting *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020)).

An applicant who seeks withholding or deferral of removal under CAT must "establish that it is more likely than not that he or she would be tortured if removed." 8 C.F.R. § 1208.16(c)(2). This requires a showing of "a substantial risk" of torture, *Mabuneza*, 16 F.4th at 1226, "intentionally inflicted with the consent or acquiescence of a public official," *Meraz-Saucedo*, 986 F.3d at 686 (citing 8 C.F.R. § 208.18(a)(1)–(2)). "The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 1208.16(c)(2). If the applicant is not credible, the fact finder considers the remaining evidence to determine if the applicant has nonetheless met his burden. *See Alvarenga-Flores*

*v. Sessions*, 901 F.3d 922, 926 (7th Cir. 2018) (noting that the applicant "provided conflicting accounts about what happened … [and] failed to offer convincing corroborating evidence or explain the discrepancies"); *Krishnapillai v. Holder*, 563 F.3d 606, 619 (7th Cir. 2009) (explaining it was not erroneous for the IJ to require additional corroborating evidence after an adverse credibility determination).

Substantial evidence supports the IJ's adverse credibility determination. Cabrera-Ruiz contradicted himself multiple times and made key omissions that undermine his credibility. To accept Cabrera-Ruiz's explanation to the IJ for these inconsistencies, that the ICE agent never asked about torture generally, would require a fact finder to suspend disbelief. Throughout his life, Cabrera-Ruiz has exhibited a desire to be in the United States, not Mexico. The ICE agent clearly presented an opportunity for Cabrera-Ruiz to make his case for why he feared returning to Mexico. The IJ was rightly concerned that Cabrera-Ruiz made it through an ICE interview without mentioning twenty-seven days of torture—one does not forget such a traumatizing experience. Further, Cabrera-Ruiz's inability to keep a consistent story regarding his drug trafficking contextualizes this glaring omission. He provided conflicting statements on his supplier's identity, his reasons for trafficking drugs, his affiliation with different cartels, and key dates. Cabrera-Ruiz's statements present various contradictions and omissions indicating he is an unreliable witness, and do not compel a contrary conclusion.

Substantial evidence also supports the IJ's determination that Cabrera-Ruiz's remaining showing is insufficient for him to receive CAT relief. Cabrera-Ruiz's partner, Robles, did not have personal knowledge to independently corroborate his

torture claims. While Cabrera-Ruiz's cousin, Banuelos Ruiz, attested that men threatened their uncle and shot at their family, her attestation does not corroborate Cabrera-Ruiz's torture claim, let alone establish a causal link between his claimed cartel activities and the shootings. Nor does the expert report, which relied on Cabrera-Ruiz's discredited claims, carry Cabrera-Ruiz's CAT burden. General evidence of government acquiescence to cartel activity does not alone support a finding that a public official will "turn[] a blind eye" if the CJNG attempts to torture Cabrera-Ruiz. *Meraz-Saucedo*, 986 F.3d at 687 (citing *Herrera-Garcia v. Barr*, 918 F.3d 558, 562 (7th Cir. 2019)). Further, there is no evidence that Cabrera-Ruiz's gang tattoos would cause trouble in Mexico today when they have not been a problem in the past. These pieces of circumstantial evidence leave major gaps that Cabrera-Ruiz could not fill with credible testimony. Under the highly deferential substantial evidence standard, we can only conclude that the IJ did not err by denying Cabrera-Ruiz's application.

### III. Conclusion

For these reasons, we deny the petition for review.